The Burlington National Bank *et al.* v. M. L. Beard *et al.*

| 55 | 773 |
| 56 | 466 |
| 55 | 773 |
| 59 | 382 |
| 55 | 773 |
| 62 | 674 |
| 55 | 773 |
| 71 | 719 |

1. Witness—*Transactions with Decedent.* Neither a sheriff who has levied a writ of attachment upon chattels nor the attachment-creditor is an "assignee" of the attachment-debtor within the meaning of § 322 of the code of civil procedure; and a vendee of such attachment-debtor, although a party to the action, may testify in his own behalf to the transaction whereby he claims title from the attachment-debtor, who has died in the meantime.

2. Personal Property—*Fraudulent Transfer—Declarations of Party.* The declarations of one of the parties to a transfer of personal property alleged to be fraudulent are admissible in evidence against his vendee, although the person making them is not a

party to the suit, where such declarations are made at or about the time of the transfer as claimed by either party to the suit, and there is no open and visible change of possession of the property.

*Error from Coffey District Court.*

THE original action was commenced September 5, 1889, by M. L. Beard and G. W. Beard, as partners, against J. R. Garrett, the Burlington National Bank, the Bank of LeRoy, and Lane & Kent, partners, to recover damages for the taking and conversion of certain cattle and hogs of the alleged value of $4,050, and 60 acres of standing and growing wheat said to be worth $1,800. A trial at April term, 1890, resulted in a judgment in favor of the plaintiffs against J. R. Garrett and the two banks for $4,042.73 and costs of suit. James H. Beard, the father of the plaintiffs below, had been the owner of the cattle and hogs in controversy, and he had made a transfer of the same to his said sons. The date of the transfer is not alleged in the pleadings, but was the subject of proof, the plaintiffs claiming that they purchased the cattle and hogs from their father April 5, 1888, and at or about the same time their father granted them the use of a large farm, and that they had sown and were raising the wheat in controversy, which was their own. The defendants below claimed that the transfer was made on or about April 9, 1889. James H. Beard, although not much indebted on his own account, had become surety for Lafe Staley, his son-in-law, to the banks above named principally, and to some other creditors, in a sum aggregating about $15,000. Staley failed about April 9, 1889, and suits were commenced against Staley and James H. Beard by the banks and by Lane & Kent and some others, and orders of attachment were issued, and the same were levied by J. R. Garrett, sheriff, on April 10, 1889,

on the cattle, hogs and wheat in controversy, as the property of James H. Beard. The property was afterward sold by order of the court. James H. Beard died on March 15, 1890. Other facts appear in the opinion, filed November 9, 1895.

*L. B. & J. M. Kellogg*, for plaintiffs in error; *Redmond & Junkins*, of counsel.

*Graves, Lambert & Dickson*, for defendants in error.

The opinion of the court was delivered by

MARTIN, C. J.: I. On the trial of the case the plaintiffs were permitted, over the objection of the defendants, to testify to a transaction with their father whereby they claimed ownership of the property levied on by the sheriff. It is asserted by the plaintiffs in error that this ruling was erroneous, and whether it was so or not depends upon the construction to be given to the word "assignee," as used in § 322 of the code of civil procedure, which, so far as necessary to the consideration of this case, reads as follows:

"No party shall be allowed to testify in his own behalf in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where they have acquired title to the cause of action immediately from such deceased person. . . ."

Were the sheriff and the attachment creditors the assignees of James H. Beard within the meaning of said section? Webster defines "assignee" as—

"A person to whom an assignment is made; a person appointed or deputed by another to do some act, perform some business, or enjoy some right, privilege,

or property; as, an assignee of a bankrupt. An assignee may be by special appointment or deed, or be created by law; as, an executor.''

Worcester, citing Burrill as authority, says an '' assignee '' is:

'' One to whom any right or property is assigned; one who is appointed by another to do any act; one to whom some right or property is transferred, or upon whom either devolves by the mere operation of law. In this sense, an executor is the assignee of the testator; and an administrator, of the intestate.''

Bouvier defines '' assignee '' as follows:

'' One to whom an assignment has been made. Assignees are either assignees in fact or assignees in law. An assignee in fact is one to whom an assignment has been made in fact by the party having the right. An assignee in law is one in whom the law vests the right; as, an executor or administrator.''

Our act concerning the construction of statutes (ch. 104, Gen. Stat. of 1889) requires that—

'' Words and phrases shall be construed according to the context and the approved usage of the language; but technical words and phrases and such others as may have acquired a peculiar and appropriate meaning in law, shall be construed according to such peculiar and appropriate meaning.''

We think that the common acceptation of the word '' assignee '' is limited to an assignee in fact, and does not comprehend an assignee by mere operation of law. If it had been intended by the legislature to include the latter sense, it would have scarcely been necessary to use the words '' executor, administrator, heir at law, next of kin, or surviving partner,'' for the word '' assignee '' would be broad enough to embrace them all, and therefore, the word '' assignee '' was used in its more limited sense of an assignee in fact. It would

be regarded as a strained construction of the word to extend it to a sheriff, or the creditors whom he represents, by reason of the levy of an attachment upon the property of a defendant. The attachment-creditors could not even maintain an action to set aside fraudulent transfers of the property until after the reduction of their claims to judgment. ( *Tennent v. Battey,* 18 Kas. 324.) We are not referred by counsel on either side to authorities which we consider directly in point under a statute like ours, and we have reached a decision as of first impression, and hold that the court did not err in the admission of this testimony.

II. Testimony was offered on the part of the defendants below tending to show that James H. Beard, in obtaining extensions after April 5, 1888, of the notes on which he was bound as surety, represented that he still owned the cattle and other property on his place ; that he made like representations to other persons ; and that at 1 o'clock of the night before the officers levied on the property, he went to the house of Mike Beard, a relative, and told him "that Lafe Staley had run all his cattle out of the country and was 'busted up,' and that his creditors were going to attach in the morning, and that he had turned all of his property over to his boys to save himself," and that he (Mike Beard,) "must also put his property out of his hands or it would be attached." All testimony of this character, as well as the offer to prove that prior to the attachment James H. Beard conveyed all his real estate liable to judicial process to his said sons was excluded, presumably on the ground that the acts and declarations of James H. Beard after he had transferred the personal property to his sons was not admissible against them, and that the transfer of the real property at a time subsequent to the transac-

tion relating to the personal property could not affect the latter. But it should be borne in mind that the defendants below did not admit that the personal property was transferred in April, 1888, but contended that it did not take place until within a few hours prior to the attachment, and that the real estate was conveyed to the sons at about the same time, so that the elder Beard divested himself of all means of meeting his obligations; and this was a family arrangement, not in the usual and ordinary course of business. We are of opinion that the testimony was admissible, although James H. Beard had never been a party to the action. In cases of transfers of property alleged to have been made with intent to hinder, delay or defraud creditors, two steps are usually necessary: the first being to prove the fraudulent intent of the debtor, which may be made apparent by his acts and declarations, even though not a party to the action; the second, to show that the defendant vendee was not a purchaser for a valuable consideration, or that he knew or had reason to believe that the vendor was acting in bad faith toward his creditors. It should be remembered that after April 5, 1888, the cattle and hogs were kept just as before, without any open and visible change of possession, thus enabling James H. Beard to obtain credit on the strength of his possession and apparent ownership, although he may have actually sold the property to his sons. But there was some evidence tending to support the theory of the defendants below that the transfer was of very recent date, even if not in the very face of the officer on the way with his writs. The court should have allowed the introduction of evidence in support of each of the conflicting theories under proper instructions to the jury as to its consideration. For authorities on

this subject see Bump, Fraud. Conv. (3d ed.) 579–584 ; 1 Greenl. Ev. (14th ed.), §§ 190, 191 ; *Smith v. Boyer*, 29 Neb. 76 ; *Gillett v. Phelps*, 12 Wis. 392, 400 ; *Mamlock v. White*, 20 Cal. 598, 600 ; *Heartman v. Diller*, 62 Pa. St. 37, 43 ; *Ferbrache v. Martin*, 32 Pac. Rep. (Idaho) 252, 253.

Some complaint is made of the instructions given by the court to the jury, and we think they were not as full and comprehensive as they should have been ; but, if plaintiffs in error asked any instructions, they do not appear in the record, and we would not feel justified in interfering with the judgment on the ground of instructions alone.

For errors of the court in excluding evidence as hereinbefore stated, the judgment of the district court is reversed, and the case remanded for a new trial.

All the Justices concurring.