### ELDRIDGE v. FINNEGAR.

No. 261.　Opinion Filed November 9, 1909.

(105 Pac. 334.)

1. **PRINCIPAL AND AGENT—Sales by Agent—Undisclosed Principal—Rights of Parties.** If the purchaser of coal does not know, and has not good reason to know, that he is dealing with the agent of the owner, he is justified in treating the agent as owner, and in a suit by the owner for the purchase price he must take the contract of sale as he finds it, subject to such rights as the purchaser might avail himself of against the agent, assuming him to be the owner.

2. **SAME.** If the purchaser of coal does not know, and has not good reason to know, that he is dealing with the agent of the owner, he is justified in treating the agent as owner, and in a suit by the owner for the purchase price is entitled to credit thereon for the amount of loss by said purchaser sustained on the sale of a suit of clothes agreed by the agent to be by him received in part payment therefor, but which was not delivered on account of said agent's death.

(Syllabus by the Court.)

*Error from Oklahoma County Court; Sam Hooker, Judge.*

Action by George C. Eldridge, trading as the "Eldridge Coal Company," against C. A. Finnegar. Judgment for defendant, and plaintiff brings error. Affirmed.

*Thorp & Thorp,* for plaintiff in error.
*Shartel, Keaton & Wells,* for defendant in error.

TURNER, J. On February 4, 1908, George C. Eldridge, trading in Oklahoma City as the "Eldridge Coal Company," sued C. A. Finnegar, defendant in error, before a justice of the peace of that township, on account for·coal to him sold and delivered, in the sum of $25.30. After set-off pleaded and offer ·to confess judgment for $2.30 and costs, there was judgment for plaintiff for that amount, from which plaintiff appealed to the county court. There, by leave, defendant by amended answer in substance admitted plaintiff to be the owner of the coal, but alleged that he had bought said coal direct from Lloyd Eldridge,·believing him so to be, and that too without notice for a long time thereafter that plaintiff was interested therein, whereas, in truth said Lloyd Eldridge was only the general agent and manager for plaintiff; that in part payment therefor defendant agreed with said agent to and did make him a suit of clothes for $38, which by said agreement should have been credited on the account, but which said suit, because of the death of said Eldridge, was never by him received, but was by defendant after his death sold ·for $15, leaving $23 due thereon, for which he claimed credit on the account sued and tendered $2.30 and costs in full of the demand. There was trial to the court and judgment for defendant and that he, "having made tender of $2.30 in court below and having kept said tender good," was released from costs subsequent thereto.

After motion for a new trial filed and ·overruled, plaintiff brings the case here and assigns as error that said judgment is contrary to the evidence. There is no conflict therein. It, in substance; discloses: That plaintiff, George C. Eldridge, was, at the time of the sale to defendant, in the coal business in Ok-

lahoma City under the name of the "Eldridge Coal Company";
that he had in his employ one Lloyd Eldridge, whose duties were
to solicit orders and sell coal for cash. At that time, known to
both plaintiff and defendant, there was in the city telephone di-
rectory the following:

"Eldridge Coal Company, G. C. L. E. Eldridge, proprietor.
Coal, Wood and Feed. 228 West First Street.

"Eldridge, George C. Eldridge Coal Company, R. 210 W. 1st.
"Eldridge, Lloyd E. wife, Ruth. Eldridge Coal Co., R. 26
E. Fourth."

On the day of the sale, Lloyd Eldridge, acting as agent afore-
said, but supposed by defendant to be the owner of the Eldridge
Coal Company, solicited and obtained from defendant an order
for the coal in question, concerning which he testified:

"In the first part of August, Mr. Lloyd Eldridge asked me
and wanted to know if I didn't want to put in some coal, as it
would be a pretty good time, as I could save so much on the ton,
and he said he wanted a suit of clothes after a while, and wanted
to know how much coal I could use. I told him I only had room
for about $25.00 worth, and he said, 'I will send it up to you,
and after a while I will come in and have my measure taken for
a suit of clothes,' and on the 15th of September, 1905, he came
in, and I took his measure for the clothes, and I made up that
suit of clothes, and they were finished at the time he died; but
before that they delivered the coal."

When the coal was delivered, he further testified that said
agent "came in with a duplicate slip and told me to give him
credit for $25.50, which I did." After said agent's death defend-
ant sold the suit for $15. Thereafter plaintiff presented his bill
for the coal, at which time defendant explained the transaction
and asked credit on the account for $23 loss on the suit. The
trial court, in effect, held that said sum was a proper item of cred-
it, and therein we see no error. The evidence fairly discloses that
defendant believed at the time the coal was sold and delivered
that he was dealing with the owner thereof, and that he had not
good reason to believe otherwise. He so testified, and that he had
good reason so to believe appears from the entry in the city tele-
phone directory introduced in evidence, wherein said agent ap-

pears as "proprietor" of the "Eldridge Coal Company." Webster's International Dictionary 1907 defines the word "proprietor" to mean: "One who has the legal right or exclusive title in anything, whether in possession or not; an owner; the proprietor of a farm or of a mill." Defendant did not know plaintiff before he presented his bill, or that he had any interest in the property. If the purchaser of property does not know, and has not good reason to know, that he is dealing with the agent of the owner, he is justified in treating the agent as owner, and payment of the purchase price to him is a good defense to an action of the owner for the amount.

*Eclipse Windmill Co. v. Thorson,* 46 Iowa, 181, was an action on account for a balance due upon the sale of a windmill. Defendant purchased it from Blackmarr & Son, agent for plaintiff. Subsequently he was garnished upon an execution against said agents. He being ignorant of the agency, and supposing he owed said agents for the mill, answered as garnishee that he was so indebted, and judgment was rendered against him on his answer. He pleaded said facts in defense, and judgment was rendered in his favor. Plaintiff appealed. The trial court instructed the jury that:

"If you find that Blackmarr & Son, in negotiating the sale of the mill to the defendant, did not disclose the fact that they were acting as agents for the Eclipse Windmill Company, and if you find that defendant did not have good reason to know such fact, then if Blackmarr & Son have been paid for the mill, the plaintiff cannot recover."

This was assigned as error. The following bill was sent to and received by defendant:

"Beloit, Wis., Jan. 5, 1876. Paul Thorson bought of Eclipse Windmill Co. one ten foot mill, one hundred feet tin galvanized pipe, one tower, $107.50. Paul Thorson. Pay the account to M. V. Blackmarr, who will remit it with other collections to us. C. B. Salmon, Treasurer."

The court held the instruction good, and in passing said:

"We cannot say that the defendant ought to be held to pay

for the property twice if he neither knew nor had good reason to know the plaintiff in the transaction."

And, in answering the alleged error that the verdict was contrary to the evidence, said that, inasmuch as the testimony disclosed defendant could not read English, the assignment was not well taken and as the jury declared by their verdict that he did not have any reason to know, notwithstanding the receipt of the bill, who the vendor of the mill was the court would not be justified in setting the verdict aside.

But let that be as it may, in this case it appears, as stated, that defendant dealt with the agent believing him to be the principal, and made the contract accordingly. As the principal by this action now seeks to enforce said contract, he must take it as the agent and the purchaser left it. He must take his pay as the agent agreed to receive it.

*Hook et al. v. Crowe et al.*, 100 Me. 399, 61 Atl. 1080, was *assumpsit* to recover the price of awnings and sash curtain sold and delivered by plaintiffs to defendants. Plaintiffs recovered, to which ruling defendants excepted, and an agreed statement of facts was certified to the law court. The facts were that one Hook, as selling agent of plaintiffs applied to defendants for an order, which was given for the articles named, on consideration that Hook would take pay therefor in clothes and work out of the store, which he agreed to do. Hook sent an unsigned order to plaintiffs, who later shipped the goods, which were by defendants received, and also mailed them a bill the same day. Plaintiffs had no knowledge of the arrangement for pay between Hook and defendants. On the day of the arrangement, Hook had $1.50 worth of work done by them, and later $8.50 all pursuant to said arrangement. Defendants in the action sought to have these items allowed as a credit on the bill. The court below disallowed it. The Supreme Court, although sustaining the exceptions on other ground, in passing said:

"  *  *  *  If the defendants dealt with Hook, the agent, believing him to be a principal, the plaintiffs, who were undisclosed principals, must take the contract, if they seek to enforce it,

as their agent and defendants left it. If they seek the advantages of the contract, they must suffer its burdens, and must allow the defendants by way of payment for the goods sold and services rendered to the agent."

And in the syllabus say:

" * * * If the purchaser, in dealing with the agent, believes him to be the principal, the undisclosed principal must take the contract, if he seeks to enforce it, as his agent and the purchaser left it. If he seeks the advantages of the contract, he must suffer its burdens. He must take his pay as the agent agreed to take it."

See, also, *Miller v. Sullivan*, 39 Ohio St., 79; *Johnson v. Hoover et al.*, 72 Ind. 395; 2 Greenleaf on Evidence, § 66.

We are therefore of opinion that the judgment of the trial court is supported by the evidence, unless it is true, as contended by plaintiff in error, that the court erred in permitting defendant to testify as to the transaction between himself and the deceased agent. He relies on Wilson's Rev. & Ann. St. Okla. 1903, § 4509, as follows:

"No party shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, where the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where they have acquired title to the cause of action immediately from such deceased person."

We have examined the cases cited in support of this contention, none of which are in point. As the plaintiff is in no sense the executor, administrator, heir at law, next of kin, surviving partner, or assignee of his agent, nor derived title to this cause of action from him, there is nothing in this contention.

The judgment of the trial court is affirmed.

All the Justices concur.