## SCOTT v. BENNETT.

No. 18590.  Opinion Filed March 26, 1929.

Rehearing Denied Oct. 8, 1929.

W. L. Boner and MacDonald & MacDonald, for plaintiff in error.

Hayes & Hayes, for defendant in error.

BENNETT, C. The parties to this suit appear here in the inverse order in which they appear in the trial court. They will be referred to herein as plaintiff and defendant in the order in which they appeared in the said court.

W. F. Bennett is the owner of a promissory note for $658 due June 23, 1923, and executed by J. Winfield Scott, and the said Bennett claims also that he was at one time the legal and equitable owner and holder of certain collateral to said note, to-wit, a certain promissory note for $4,000 made by R. P. Bowles and wife, Hattie M. Bowles, to John W. Scott. This collateral note was executed March 6, 1918, and was payable about five years later and secured by real estate mortgage covering certain property in Durant, Bryan county, Okla.

This suit was brought in the district court of Bryan county, Okla., by plaintiff against John W. Scott and the personal representatives and heirs at law of R. P. Bowles and Hattie M. Bowles, both of whom are dead, Hattie M. dying before and R. P. Bowles dying after having been made a party to this suit.

Plaintiff in his petition alleges the ownership of the smaller note hereinbefore referred to, together with the fact that he at one time held the larger note and mortgage as collateral thereto pledged to him by J. Winfield Scott; that John W. Scott, the original payee, made an assignment of said collateral note and mortgage to J. Winfield Scott July 16, 1918; that the mortgage and such assignment thereof are duly recorded in the office of the county clerk of Bryan county, and copies of the same are attached to and made part of plaintiff's petition, and that J. Winfield Scott assigned and delivered the note last named and the mortgage securing same to plaintiff as collateral to secure the prompt and certain payment to plaintiff of the $658 note referred to above, and that plaintiff is now the owner and holder thereof.

It is also alleged that J. Winfield Scott is now dead, but that John W. Scott has taken charge of the estate of said decedent, and has appropriated the same to his own individual use; and that after transferring and delivering the Bowles note and mortgage to J. Winfield Scott, the said John W. Scott wrongfully released of record the said note and mortgage and took a renewal thereof from the makers in his own name.

It would serve no useful purpose to set out the pleadings in detail, nor the issues formed thereby, except to say that they

present properly the crucial issue in this case, which is : Did J. Winfield Scott, as the owner and holder, pledge to the plaintiff the $4,000 note and real estate mortgage securing the same as collateral and security to the note due by the said J. Winfield Scott to plaintiff?

The parties tried the case in the court below upon the theory that this was the controlling issue therein, and on this vital issue the evidence was in more or less sharp conflict.

It will be observed that the plaintiff is not suing to foreclose the collateral mortgage, but his action is in the nature of one for conversion charging John W. Scott with having wrongfully taken over and converted to his own use and benefit and released of record a note and the mortgage securing the same which belonged to said plaintiff as collateral, and asking that the said Scott account to plaintiff for the value of such collateral security taken and disposed of to the extent of the amount of the note held by plaintiff and for the security of which the collateral note was pledged to him. There is attached to the petition a copy of the $4,000 mortgage, a copy of the assignment of said mortgage alleged to have been made by John W. Scott to J. Winfield Scott together with the indorsements thereon and perhaps other papers. The unverified answer of defendant, John W. Scott, in substance, is that J. Winfield Scott was never the owner nor in possession of the Bowles note and mortgage, and that the same had never been transferred or assigned to him for any purpose whatsoever. The cause was submitted to a jury who by their verdict found for the plaintiff, and a judgment was rendered on such verdict in favor of plaintiff and against John W. Scott from which he alone appeals. For reversal he presents three propositions:

First. Error of the court in permitting plaintiff, W. F. Bennett, to testify with respect to certain communications and transactions had with J. Winfield Scott as follows:

"Q. After that note became due, did you have any deal with Mr. J. Winfield Scott? By Mr. MacDonald: Object to him testifying about any deal with Winfield Scott. By the Court: Sustained. * * * By the Court: And you are now suing John W. Scott for conversion? By Mr. Hayes: Yes, sir. By the Court: Winfield Scott is dead as everybody agrees? By Mr. Hayes: Yes, sir. * * * Q. Did J. Winfield Scott leave a wife and some children? A. Yes, sir. Q. Do you know how many children? A. Two, I think. Might be three. Q. When that note became due, did you go and see Mr. J. Winfield Scott about collecting it? A. Yes, sir. Q. Did he give you any security for it? By Mr. MacDonald: Objected to as incompetent, irrelevent and immaterial, and in violation of the statute. Testifying to a transaction with a dead man. By the Court: Overruled. By Mr. MacDonald. Exception. A. Yes, sir, he gave me collateral about the fourth time I went to see him. It (had) been renewed once. Q. What collateral did he give you? A. He put up a transfer—By Mr. MacDonald. Object to the witness using the word transfer. By the Court: Sustained. Q. The note and transfer, that is what he put up the Bowles note. By Mr. MacDonald: I object—* * * Q. When you went to see him, did he have a note that he offered to you as collateral, and if so, what note? By Mr. MacDonald: Object to —I am to have the same objection unless he sold the note. A. Yes, sir, he sold me the note. Q. What note was that? A. $4,000 on the R. P. Bowles and Hattie Bowles property. Q. You remember the date of that note? A. No, sir, I don't remember now. Q. Did he proceed (pretend) to have an assignment of that particular note and mortgage from his father? A. He did. Q. I will ask you if that is the assignment? A. Yes, sir, it is. Q. Did he write the name on the back there and deliver it to you? A. Yes, sir. Q. Did you take the assignment away from there—what was done with the assignment? A. We agreed that he keep the note and all the papers as he was fixing to foreclose the mortgage. He said he would keep them there and foreclose the mortgage. By Mr. MacDonald: Objection—I am objecting to every statement the dead man made. By the Court: Yes, sir. A. —he stated that he was getting ready to foreclose the Bowles note. He said, 'You take the transfer and leave the note with him,' and said, 'I will represent you and myself,' and said 'It will not cost you a cent.' He says, 'Take care of the transfer as he might need it,' but said he didn't think he would. I took the transfer and left the note with him."

It is contended first by the plaintiff that this objection to the competency of the witness under the statute is not properly made. This argument is not without force, and authorities are referred to in the brief which tend to sustain the point, but, without determining that matter, we pass on to the merits of the objection upon the assumption that the objection itself was aptly and properly made. The defendant, as a basis for this contention that the evidence is not admissible, relies solely upon section 588, C. O. S. 1921, which reads as follows:

"No party to a civil action shall be al-

lowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person; nor shall the assignor of a thing in action be allowed to testify in behalf of such party concerning any transaction or communication had personally by such assignor with a deceased person in any such case; nor shall such party or assignor be competent to testify to any transaction had personally by such party or assignor with a deceased partner or joint contractor in the absence of his surviving partner or joint contractor, when such surviving partner or joint contractor is an adverse party. If the testimony of a party to the action or proceeding has been taken, and he afterwards die, and the testimony so taken shall be used after his death in behalf of executors, administrators, heirs at law, next of kin, assignee, surviving partner or joint contractor, the other party, or the assignor, shall be competent to testify as to any and all matters to which the testimony so taken relates."

It should be observed here that the deceased person is J. Winfield Scott. Neither his executor, administrator, heir at law, next of kin, surviving partner, nor assignee acquiring title to the cause of action from such J. Winfield Scott, is an adverse party in this lawsuit, and since the other parts of the section are not applicable, we are warranted in saying that the admission of the evidence does not offend against the inhibition of this statute.

In the case of Grosshart v. McNeal, 95 Okla. 102, 218 Pac. 329, the court, after referring to section 588, C. O. S. 1921, says:

"This and similar statutes have been the subject of discussion in many cases in this court, in the Supreme Court of Kansas, and other states. We think that the rule has been well settled that a statute such as this, that has for its purpose disqualifying a witness to submit testimony in his own behalf, is not to be extended by construction: that the statute is to be strictly construed. Interest in the result of litigation does not operate to disqualify a party as a witness in the absence of a statute so providing. Where a statute such as here undertakes to disqualify a person from testifying in his own behalf, disqualification arises only upon the specific conditions named in the statute itself. The court cannot extend the exception embraced in the statute by interpreting therein provisions not found in the statute itself. Williams v. Campbell, 84 Kan. 46, 113 Pac. 800; Burlington v.

Beard, 55 Kan. 773, 42 Pac. 320; Sarbach v. Sarbach, 86 Kan. 894, 122 Pac. 1052; Bryan v. Palmer, 83 Kan. 298, 111 Pac. 443, 21 Ann. Cas. 1214; Hess v. Hartwig, 83 Kan. 592, 112 Pac. 99. It will be noted that the statute does not purport to disqualify a person to testify in his own behalf in respect to a transaction or communication had personally by such party with a deceased person. It does so only when the adverse party is the executor, which is not this case, the administrator, which is not this case, heir at law, which is not this case, next of kin, which is not this case, surviving partner, which is not this case, or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person. Confusion often results from attempting to place a strange construction upon statutes couched in words the ordinary meaning of which is clear."

To the same general effect see Eldridge v. Finnegar, 25 Okla. 28, 105 Pac. 334, in which the court in the opinion says:

"We are therefore of opinion that the judgment of the trial court is supported by the evidence, unless it is true, as contended by plaintiff in error, that the court erred in permitting defendant to testify as to the transaction between himself and the deceased agent. He relies on Wilson's Rev. & Ann. St. Okla. 1903, sec. 4509, as follows: 'No party shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, where the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where they have acquired title to the cause of action immediately from such deceased person.' We have examined the cases cited in support of this contention, none of which are in point. As the plaintiff is in no sense the executor, administrator, heir at law, next of kin, surviving partner, or assignee of his agent, nor derived title to this cause of action from him, there is nothing in this contention."

Following the foregoing authorities, we hold that the court did not err in permitting the testimony.

Second proposition. Error of court in instructing the jury and refusing to give instructions asked by defendant. Defendant requested the court to give the following instruction:

"You are further instructed that the assignment of a negotiable note may be made by a simple indorsement on said note, and said indorsement when so made carries with it all collateral security, but the transfer of any interest in real estate must be made in the form prescribed by law, and

a simple indorsement on the back of a transfer already made is not sufficient under the law to constitute a transfer. You are, therefore, instructed that if you find from the evidence that no proper transfer was made as herein instructed, but that the plaintiff relies solely upon an indorsement of signature alone, then and in that event the plaintiff cannot recover."

We think there is no error in refusing this instruction. This instruction assumes that the plaintiff relies solely on an indorsement of collateral. From the merest glance at the evidence, this does not appear to be plaintiff's contention. Plaintiff contends that the note and mortgage were turned over to him by J. Winfield Scott as collateral to his $658 note, and thereupon at the request of said Scott, who was an attorney, the note was left with Scott as such attorney for the purpose of having him hold the same and protect the rights of the plaintiff in said collateral because of the fact that said attorney was preparing to foreclose the Bowles mortgage, and that Scott represented that he could and would represent him without cost or fee in that proceeding. As a matter of fact, the evidence strongly indicates that the original assignment, properly signed and acknowledged before a notary public by John W. Scott conveying this note and mortgage to J. Winfield Scott, was later indorsed in blank on the reverse side thereof by J. Winfield Scott and delivered by him to plaintiff as evidence of such transfer of collateral. The evidence does not show that the note itself was indorsed, but the plain inference from the evidence is that it was with the assignment at the time the collateral was turned over by J. Winfield Scott to the plaintiff. Plaintiff indicates in his testimony that he was offered this collateral, and we quote his own words in answer to the following questions:

"Q. When you went to see him, did he have a note that he offered to you as collateral, and if so, what note? * * * A. Yes, sir, he sold me the note. Q. What note was that? A. $4,000 on the R. P. Bowles and Hattie Bowles property."

This testimony was corroborated by the statement of B. W. Carmack who said that he had a conversation with J. Winfield Scott with reference to the note he owed W. F. Bennett, and that Scott told him that he had "fixed Mr. Bennett up; that he had made an assignment to him of the Bowles mortgage." When this evidence is construed with the evidence of plaintiff that he left the note with the attorney for collection, we think the jury would have been warranted in finding that there was an actual manual delivery of the note along with the assignment of mortgage securing the same to the plaintiff. It is quite true, of course, under the general law, that delivery is a part of the execution of a paper, and that ordinarily a paper writing does not become operative until it is delivered, but it is equally true that, in almost every case, what is or is not a delivery is to be determined by the facts and circumstances surrounding that particular case, and it is further true that the fact of delivery is largely a matter of intention of the parties, and that while intention alone, even though mutual, will not amount to a complete transfer, nevertheless, when there are sufficient circumstances detailed tending to show the intention and surrounding facts and circumstances tending to show that the parties did deliver the instrument, or did those things which they construed to be delivery, it becomes a question of fact for the determination of the jury. In this case the plaintiff was threatening suit against J. Winfield Scott and was demanding either money or security, and finally the debtor offered to give him the Bowles note and mortgage as collateral. At that time the debtor had, as shown by the evidence, in his possession, a formal transfer of this note and mortgage from the original payee, John W. Scott. The fair inference from the evidence, too, is that he had also the note and both of which he turned to the plaintiff, but the note was turned back as indicated above for the purpose of foreclosure and to be held by J. Winfield Scott as attorney for the plaintiff. In the case of In re Reeve's Estate (Iowa) 82 N. W. 914, the court says:

"The holder of negotiable instruments as collateral security, receiving the same so as to become a party thereto, does not lose his right and title thereto, nor to the proceeds thereof, by a delivery of same to the pledgor, where such delivery is made with the intention or upon an agreement that the pledgor shall proceed, for and on behalf of the pledgee, to make collection thereof, or do some other proper and necessary act in respect thereto. Where collection of collaterals is the object, the pledgor is regarded as the representative or agent of the pledgee."

We think this case squarely in point and illustrative of the rule.

In the case of Indiana Trust Co. v. Byram (Ind.) 72 N. E. 670, the court says:

"We think there must be some act or declaration on the part of the grantor from which it may be inferred that he intended to part with title in the property, and this

whether the grantees be infants or adults. * * * It may be delivered without being actually handed over, and, if once delivered, its retention by the grantor does not affect the title of the grantee.' Burkholder v. Casad, 47 Ind. 418. * * * 'No particular form is necessary to perfect the delivery of a deed. A deed may be delivered by any acts or words evincing the intention of the grantor to deliver it.' * * * Mallatt v. Page, 8 Ind. 365. * * *. "

8 C. J., sec. 335, p. 204, is as follows:

"What constitutes delivery depends largely on the intent of the parties. A constructive delivery is sufficient if made with the intention of transferring the title. It is not necessary that delivery should be by manual transfer, and this rule is recognized by the definition of delivery in the Negotiable Instruments Law, as the transfer of possession 'actual or constructive.' * * * There may be a delivery notwithstanding the maker keeps the note in his possession where it is apparent that he intended to hold it for the benefit and as the agent of the payee, and especially is this so where, on the death of the maker, payments by him are found endorsed thereon."

The testimony of W. F. Bennett, the plaintiff, to the effect that the note was sold and delivered to him, but that he left the same with J. Winfield Scott as attorney for collection, is not disputed.

It is the contention of John W. Scott that he never parted with possession of this note; that while he executed the assignment of the note and mortgage and acknowledged the same before a notary, and also indorsed the note to J. Winfield Scott, he never parted with possession thereof. The attorneys for defendant sought vainly to account in some extraordinary fashion for the possession of this assignment in the hands of J. Winfield Scott, but when the evidence is read from start to finish, the mystery is not solved. John W. Scott was a very old man. He seems to have made a habit of indorsing his notes to his wife and children; and where the same were secured by mortgage, to have executed and acknowledged assignments of the mortgages. He testified that he kept the assignments in one place, the endorsed notes in another (for what reason it is not clearly apparent), and that from time to time he would erase the names of the grantee on an assignment or on a note to suit the requirements of the occasion. It is worth noting also that he examined the indorsement on the assignment, and was uncertain as to whether or not the signature was that of his son, J. Winfield Scott, but two or three bankers were examined who

identified the signature as the genuine signature of his son.

The evidence in this case is all one way. In fact, it rarely happens in a case tried before a jury when the evidence is all on one side. We have examined the evidence, instructions of the court, the pleadings and the record, and we are forced to the conclusion that there is apparent no reversible error of which the defendant may complain. There is evidence in the record reasonably tending to support the verdict of the jury, and, in such case, it is the duty of this court to adhere to the findings.

For the reasons given, we hold that the judgment of the trial court should be affirmed.

TEEHEE, LEACH, REID, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.