PRUSA v. HEJDUK et al.

No. 31006. Jan. 18, 1944.

Rehearing Denied Feb. 8, 1944.

*145 P. 2d 425.*

Henry S. Johnston and Judson H. Pierce, both of Perry, for plaintiff in error.

Cress & Rosser, of Perry, for defendants in error Karoline, Ed and Bert Hejduk.

Phil O'Neil, of Enid, for defendant in error Bank of Garber.

RILEY, J. This appeal presents the question of the ownership of certain money in the hands of the First National Bank of Perry in a garnishment proceeding in aid of execution brought under 12 O. S. 1941 § 863.

On May 8, 1931, Vaclav Hejduk executed a note to Anton Prusa, plaintiff in this action, in the sum of $923, due August 8, 1931, and as security therefor executed a chattel mortgage covering 28 head of cattle, ten horses, certain farm implements, and 140 acres of growing wheat, 1931 crop. The note was not paid when due, and on July 31, 1936, plaintiff brought suit on the note and for foreclosure of the chattel mortgage. On December 23, 1936, judgment was entered on the note and the property covered by the chattel mortgage was ordered sold. Order of sale was issued and delivered to the sheriff of Noble county. Return of this order was made showing "no property found." Nothing further was done until August 26, 1941, at which time a general execution was also returned showing "no property found."

Some time prior to August 28, 1941, a public sale was advertised to be held at the Vaclav Hejduk farm, in which it was advertised that on August 28, 1941, a sale at public auction would be held wherein 43 head of cattle, certain farm machinery, etc., would be sold. Forty head of cattle, ranging in age from one year to six years, were listed and described in said advertisement. The notice of sale was signed "Mr. and Mrs. Hejduk." The First National Bank of Perry was named as clerk of the sale. On the day named, the property described and three other head of cattle were sold and the proceeds placed in the First National Bank of Perry. On the same date plaintiff herein filed affidavit of garnishment in aid of execution, in substantial compliance with 12 O. S. 1941, § 863,

naming the First National Bank of Perry as garnishee. Garnishment summons was issued and served on defendant Vaclav Hejduk and the First National Bank of Perry.

On September 8, 1941, Ed Hejduk, the son of Vaclav, filed an application to interplead, and interpleaded and answered, in which answer he set up a claim for $60.10 of the garnished funds upon the allegation that he was the owner of one of the cows sold at the sale, which brought $55, and was the owner of ten chickens, sold for $5.10.

Bert Hejduk, another son, filed a similar plea and claimed $89.50, asserting that he was the owner of two head of cattle, sold at the sale for the sum of $89.50.

Karoline Hejduk, wife of Vaclav, filed an interplea and answer in which she alleged that the cattle and other property sold at said sale did not belong to Vaclav Hejduk; that she borrowed the money to purchase the cattle and personally bought the same and had cared for and always claimed ownership thereof; that she personally had mortgaged 26 head of the cattle to the Bank of Garber prior to the garnishment proceedings.

Vaclav Hejduk filed his answer, in which he alleged that he had no interest in the funds garnisheed.

The First National Bank of Perry entered its appearance and answered in substance that it was employed as clerk of the sale, and that the bank received the purchase price of the property sold and had in its possession the sum of $1,813.28 as proceeds of said sale, which it stood ready to pay as the court might direct, and asserted that claims had been made for the money so held by Karoline Hejduk, as the owner of all the property sold except three head of cattle owned by her sons, Ed and Bert Hejduk; that the Bank of Garber claimed an interest in the fund by reason of chattel mortgages covering 26 head of the cattle, executed by Karoline Hejduk to secure payment of two notes amounting to $500, with interest and attorney fees.

On September 17, 1941, the Bank of Garber filed its plea of intervention in which it alleged that Karoline Hejduk was in fact the owner of the majority interest in the money impounded and in particular was the owner of 26 head of cattle sold; that it held two valid chattel mortgages upon the 26 head of cattle, which mortgages were then being foreclosed in a separate action in the district court of Noble county; that the mortgage indebtedness, with interest, costs and attorney fees, amounted to $562.83, which sum, together with $30 alleged expense in obtaining possession of the mortgaged property, belonged to it; that the First National Bank of Perry is merely a trustee for the Bank of Garber to the extent of its interest in the impounded funds. It prayed for an order directing the First National Bank of Perry to pay over to the Bank of Garber the sum of $592.83.

The several interpleas and answers were all duly verified. Other matters going to the question of validity of the garnishment proceedings were set up in the various pleadings of the interpleaders, but these matters seem to have been abandoned and the cause was tried upon the question of the ownership of the property sold at said sale.

Defendant Vaclav Hejduk died in October, 1941, and the cause was revived in the name of Karoline Hejduk, Bert, Ed, Frank, Joe, Fred, James, and Alex Hejduk, and Mary Dolezal and Anna Toombs, heirs at law of Vaclav Hejduk. The issues were tried to the court, resulting in findings and judgment sustaining interplea of Bert Hejduk in the sum of $89.50, less his proper part of the costs of the sale; sustaining the interplea of Ed Hejduk, and awarding him $60.10, less his part of the costs of the sale; sustaining the interplea of Karoline Hejduk and awarding her all the balance of the money impounded after deducting the costs of the sale, the amount due the Bank of Garber under its mortgage lien in the sum of $514.61. The costs of the action, including the

attorney fees of the First National Bank of Perry, were taxed against plaintiff. The interplea of the Bank of Garber was sustained and it was awarded said sum of $514.69 out of the impounded funds. After unsuccessful motion for new trial, plaintiff appeals.

The petition in error contains seven assignments of alleged error. The assignments of error are presented under three propositions.

The first proposition presented is that that court erred in rendering judgment for defendants and also for interpleaders and each of them.

This proposition is entirely without merit as applied to the interpleaders Bert Hejduk and Ed Hejduk and the Bank of Garber. The uncontradicted evidence is that Ed Hejduk was the owner of one of the cows sold at said sale, which brought the sum of $55, and he or his wife was the owner of ten chickens which sold for $5.10. The evidence is likewise uncontradicted that Bert Hejduk was the owner of two head of cattle sold at said sale, one of which sold for $40.50, and the other for $49. Aside from the fact that their testimony is uncontradicted on this question, the circumstances bear out their claim in that the sale, as advertised, stated that 43 head of cattle would be sold; 40 of them were particularly described; there was no description of the other three head of cattle advertised to be sold. There was no evidence of any kind to contradict the evidence of these two interpleaders.

The proposition is equally without merit as to the interplea and claim of the Bank of Garber. The uncontradicted evidence is that as to the 26 head of cattle covered by the chattel mortgages to the Bank of Garber, these cattle were never in the possession of Vaclav Hejduk. The evidence is that Karoline Hejduk had the control and management of these cattle and most, if not all, of them were not kept on the farm where the defendant resided. They were kept on pasture in Payne county near Stillwater, which the evidence shows Karo-

line Hejduk rented and paid cash rent for. The evidence is, as to a part of these cattle, Karoline Hejduk borrowed the money with which they were purchased on her own notes. When the mortgages were executed to the Bank of Garber, the cattle covered thereby were in the possession and under the control of Karoline Hejduk. She alone signed the notes and mortgages, and under the evidence and circumstances the chattel mortgages were good and valid liens on the property covered thereby. The only circumstances in the case tending to contradict the claim of ownership of these cattle by Karoline Hejduk is the fact that the notice of sale at which the cattle were sold was apparently signed by Mr. and Mrs. Hejduk. The evidence is that Vaclav Hejduk had nothing to do with that, and knew nothing about the preparation of the notice of sale. We cannot say as a matter of law that the finding and judgment in favor of the Bank of Garber was not supported by sufficient evidence or is against the clear weight of the evidence.

This leaves about 14 head of cattle and some farm machinery, as claimed by the interpleader Karoline Hejduk. The record discloses that some time prior to July, 1936, Vaclav Hejduk sold all the stock and farm implements then on the place at public sale. His advanced age was such that he was unable to continue operating the farm. About July, 1936, Fred Hejduk, the youngest son, who had been employed in Kansas for some months, returned to the home place and took over the operation of the farm. At that time, according to the evidence, there was no livestock and no farm implements on the place. Fred Hejduk testified that he, with his own money, purchased two horses and five head of young cattle, one and two years old; he purchased a tractor and some other farm implements, and thereafter operated the farm until about 1939. In the meantime, the cattle had increased to about 14 head. In 1939 Fred Hejduk became sick and it was necessary for him to be taken to the hospital for some time. After his recovery, he took a

course in airplane construction and obtained a job in that industry. When he left, he turned all of the livestock and farm implements over to his mother. She sold some and bought others, with her own money, according to the testimony, and Vaclav Hejduk never at any time claimed any interest or ownership in any of such property. From and after 1936 all the personal property on the farm was listed for taxation in the name of Fred Hejduk. Prior to that time it had been listed for taxation in the name of Vaclav Hejduk. But, as stated before, the uncontradicted evidence is that before July, 1936, Vaclav Hejduk had sold all the livestock on the farm.

Plaintiff argues at length that the testimony concerning the ownership of the property on the farm, and all the other property that was sold, for that matter, is so inherently improbable as to make it necessary that the finding and judgment of the trial court be reversed. With this contention we are unable to agree, though there may be some circumstances that might indicate that Vaclav Hejduk turned his property over to his wife about 1936 or 1937.

Plaintiff argues that the property included in his chattel mortgage must necessarily have entered into and become a part of the property sold, and that Vaclav Hejduk must have had an interest of some kind which he turned over to his wife in fraud to defeat plaintiff's action. In this connection, it may be noted that the note secured by plaintiff's chattel mortgage matured August 8, 1931, and plaintiff made no effort whatever to ascertain what had become of the property covered by the chattel mortgage until after he obtained his judgment in 1936. As stated before, the evidence is that at that time Vaclav Hejduk had sold all the livestock on the farm to satisfy another creditor's claim.

All these facts and circumstances were before the trial court, and in consideration of all the evidence, the trial court found in favor of the defendants and interpleaders, and we cannot say,

as a matter of law, that the judgment in any particular is not supported by sufficient evidence or is clearly against the weight of the evidence.

The second proposition is that the court erred in permitting the interpleaders Karoline, Bert, and Ed Hejduk to testify concerning certain matters, for the reason that they were incompetent to testify under 12 O. S. 1941, § 384, the applicable provisions of which are:

"No party to a civil action shall be allowed to testify in his own behalf, in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party has acquired title to the cause of action immediately from such deceased person; . . . ."

Plaintiff in his brief cites many cases by this court and the Supreme Court of Kansas where this statute has been construed and applied. But he fails to point out where any of the interpleaders were allowed to or did testify in respect to any transaction or communication had personally by them or either of them with Vaclav Hejduk in his lifetime concerning any of the issues in this case. Examination of the record discloses no such testimony. In fact, there is no evidence of any transaction or communication of any nature had by any of the interpleaders with Vaclav Hejduk concerning any of the issues involved in this case. Furthermore, the parties to the action are not such as to bring them within the provisions of said section. The only party adverse to the interpleaders is plaintiff. Plaintiff is the judgment creditor of the deceased person referred to, Vaclav Hejduk. He is not the executor, administrator, heir at law, next of kin, or surviving partner of said deceased person.

In Burlington National Bank et al. v. Beard et al., 55 Kan. 773, 42 P. 320, it is held:

"Neither a sheriff who has levied a writ of attachment upon chattels nor the

attachment creditor is an 'assignee' of the attachment debtor within the meaning of section 322 of the Code of Civil Procedure; and a vendee of such attachment debtor, although a party to the action, may testify in his own behalf to the transaction whereby he claims title from the attachment debtor, who has died in the meantime."

In Grosshart v. McNeal, Adm'x, et al., 95 Okla. 102, 218 P. 329, it is pointed out that the statute referred to does not purport to disqualify generally a person to testify in his own behalf in respect to any transaction or communication had personally with a deceased person. It does so only when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person, where such party acquired title to the cause of action immediately from such deceased person. See, also, Scott v. Bennett, 138 Okla. 272, 281 P. 251; Eldridge v. Finnegar, 25 Okla. 28, 105 P. 334.

Under the authorities above cited and the facts in this case, the witnesses referred to were not incompetent under said section.

The third proposition is that the court erred in overruling plaintiff's motion for new trial. The merits of this are included in our consideration.

Affirmed.

GIBSON, V. C. J., and OSBORN, BAYLESS, WELCH, HURST, and ARNOLD, JJ., concur. CORN, C. J., and DAVISON, J., absent.