PETER SIMON & another *vs.* STANLEY SLEINIS & another.

Essex.    November 14, 15, 1929. — February 26, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Cemetery.   Corporation,* Cemetery, Religious.   *Equity Jurisdiction,* Accounting.   *Words,* "Proprietors."

In the phrase contained in G. L. c. 114, § 1, ". . . the majority in interest of the proprietors of an existing cemetery, may organize as a corporation . . . ," the word "proprietors" means the persons having the exclusive right or title to the cemetery and does not include persons having merely a beneficial interest therein, although they be the real parties in interest.

The members of a religious parish voted to acquire a cemetery for themselves and certain others and appropriated money for that purpose. The land was conveyed to three persons as trustees, the deed specifying that, for a certain period of time, the grantees and their successors should hold title to the land and to moneys received on account of the trust; that the management of the cemetery property should be vested in a board composed of the trustees for the time being, the pastor of the parish and a certain number of members of the parish; and that the trustees should convey the trust property to any corporation which might be formed later to take and conduct the cemetery. *Held,* that one of the trustees and a majority of the members of the parish, without the concurrence of the other two trustees for the time being, had no standing, before the expiration of the trust and before it had been completely performed, to take steps under G. L. c. 114 and c. 179, to form a corporation to acquire the cemetery.

In a suit in equity by the trustees above mentioned against the parish for an accounting, it appeared that a portion of the trust land and a building erected thereon were rented for picnics from time to time, and the receipts therefrom mingled with the parish funds; that the parish itself conducted some of such picnics and paid no rent to the trustees therefor; that such use of the trust property was with the acquiescence of the trustees; and that there was no express or implied agreement that the parish should pay the trustees for the use of the grounds. *Held,* that the plaintiffs were not entitled to an accounting with reference to such use of their property.

BILL IN EQUITY, filed in the Superior Court on April 12, 1929, by Peter Simon and Vincentas Cerniauskas against Stanley Sleinis and John Marcalis, and, by amendment,

against the Parish of the Sacred Heart of Jesus of the Lithuanian National Catholic Church, to enjoin the defendants Sleinis and Marcalis from attempting to form a cemetery corporation under G. L. c. 114 and c. 179, to acquire existing cemetery property held by the plaintiffs and the defendant Sleinis as trustees for the benefit of the members of the defendant corporation; and to require the defendants to account to said trustees for money received by them in connection with such cemetery property.

The suit was referred to a master, material facts found by whom are stated in the opinion. By order of *Keating*, J., an interlocutory decree was entered confirming the master's report. The judge thereupon reported the suit for determination by this court upon the bill as amended, the answers and the master's report, "all parties having agreed that such decree may be entered as justice and equity may require."

*E. McAnally*, for the plaintiffs.

*F. J. Bagocius*, for the defendants.

PIERCE, J. This case was reported to this court by a judge of the Superior Court upon the bill, the amended bill, the answers, and the master's report which was confirmed by an interlocutory decree. By amendment the Parish of the Sacred Heart of Jesus of the Lithuanian National Catholic Church (hereinafter called the Parish) was joined as a party defendant.

The master found the following facts: The Parish was organized and incorporated as a religious corporation under Massachusetts laws on December 15, 1916, and conducts a church, for the purposes of this case independent of all outside control, in Lawrence. The defendant Marcalis has been its president since January 5, 1929. Stanislaus B. Mickiewicz, named in the trust deed, was the first pastor of the Parish. He left Lawrence prior to August, 1918; the defendant Stanley Sleinis then became pastor, and since that date has held the office without interruption. Mickiewicz died prior to October 6, 1923, when one Peter Suboczius, who was also named as a trustee in the trust deed, resigned, and on October 10, 1923, the plaintiff Cerniauskas and the defendant Sleinis were duly chosen trustees

to fill the vacancies and have since held office without interruption. The third trustee is the plaintiff Simon, who has always been a trustee under the deed.

In 1917, the parishioners decided to acquire and maintain a cemetery for themselves and others of Lithuanian birth or descent, and beside raising funds for that purpose took such steps as resulted in the purchase of the land in Methuen, described in the trust deed, for the sum of $1,100. By the terms of the trust deed a parcel of land said to contain about seventeen acres was deeded by one Emma L. Koschitzky of Lawrence to the three original trustees named in the deed, in trust, to hold the granted premises for the term of the lives of the grantees and the survivor of them and for twenty years thereafter as a cemetery for the use and benefit of members of the Parish upon the following terms and conditions: "Title to said land, the proceeds of sales of and portions thereof, and of burial rights therein, and to funds otherwise received or acquired for the general purposes of the trust, shall be vested in said trustees and their successors in office as hereinafter provided for. The general management and control of all such trust property, the investment and expenditure of all trust funds, the power to make all necessary rules and regulations for the care, preservation and use of the property, including the right to fix all fees for burial, charges for care of graves and lots, the disposition of any portion of the land not required for cemetery purposes, and all other matters pertinent to the premises, shall be exercised and directed by a Cemetery Board, so called, which shall consist of the trustees for the time being, the resident priest or pastor of such parish, and not less than three or more than seven other persons who shall be accepted members in good standing of such parish; and the members of which Board except for the trustees, shall be elected at the annual meeting of said parish beginning with the annual meeting next ensuing, and except that . . . [certain named persons] have been elected and shall constitute such Board in addition to the grantees, until such next annual meeting. The trustees shall have and are hereby given full power and authority to lease or to sell and

convey any portions of such land except that in which burial rights may have been granted, and to grant burial rights and other privileges therein, as well as freely to invest and reinvest all trust funds, as such Cemetery Board shall prescribe or authorize. . . . In event any corporation may at any time be organized or authorized to take over the trust property and conduct the same for cemetery purposes according to the general intent and the purpose of this trust the trustees for the time being shall thereupon convey, assign and transfer all the trust property, subject to rights and privileges previously given or otherwise secured to any person, to such corporation."

From the time the cemetery was acquired until the present time all business concerning it (except with reference to certain picnics) has been conducted by the two pastors, Mickiewicz and Sleinis. No other trustee nor the board exercised any control of the business of the cemetery. The money received for the business of the cemetery was deposited to the account of the Parish and mingled with the parish funds. No money was ever deposited with the trustees. At times from 1918 to 1929 the plaintiff Simon inquired of the defendant Sleinis as to the conduct of the cemetery and was assured that everything was all right, that the income was being turned over to the treasurer of the Parish and when more money was accumulated he would separate the two funds. Neither the defendant Sleinis nor the defendant Marcalis now has in his possession any funds received in connection with the cemetery.

In 1919 the parishioners raised a fund partly by gifts and partly by loans for the purpose of constructing a hall on that part of the cemetery not used for burials. This money was mingled with the general parish funds and was used to pay for the erection of the building. This hall has been rented for picnics and the receipts have also been mingled with the parish funds. The Parish itself has also conducted picnics and has paid nothing for the use of the hall or grounds.

On April 4, 1929, in accordance with a written application under G. L. cc. 114, 179, signed by one hundred and

eleven out of two hundred and three parishioners in good standing, and by the defendant Sleinis but not by the two plaintiff trustees, a warrant was issued by a justice of the peace to the defendant Marcalis directing him to take the steps enumerated in the warrant to organize a corporation. The plaintiffs, to protect title to the cemetery and to insure the carrying out of the provisions of the trust deed, have brought this bill in behalf of themselves as a majority of the trustees of said cemetery, and in behalf and as representatives of those persons who are beneficiaries under said trust, to restrain the defendants from further attempting to form a corporation and to require them to account to and pay over to the trustees all sums of money received by them on account of the use and dealings with the cemetery property.

G. L. c. 114, § 1, provides: "Five or more persons desirous of procuring, establishing and preparing a cemetery, or who are the majority in interest of the proprietors of an existing cemetery, may organize as a corporation in the manner provided in chapter one hundred and seventy-nine; but such corporation shall not sell or impair the right of any proprietor of an existing cemetery." G. L. c. 179, §§ 1, 2, provide the procedure for the organization of a corporation, the conformity with which by the members through the defendants is not disputed.

All parties to the bill of complaint and answer are in accord that the principal question of law here involved is what legislative definition is to be ascribed to the word "proprietors" in the phrase a "majority in interest of the proprietors of an existing cemetery," as such word is used in G. L. c. 114, § 1, above quoted. Does the word "proprietors" so used import, as the plaintiffs contend, only those persons who have the legal title to cemetery property or does it in addition to its primary signification of legal title connote a wider meaning to include the real parties interested in the cemetery, although their interest is less than an absolute and exclusive present right to the use of the cemetery? We are of opinion that the word "proprietors" as used in G. L. c. 114, § 1, means the persons who have the exclusive right

or title to a cemetery existing at the time such "proprietors" organized a corporation, and that that word does not embrace persons holding the beneficial interest as distinguished from the legal title. It is to be observed that the purposes of the trust have not failed or been completely performed, and the trustees do not hold the property as a resulting trust. *Packard* v. *Old Colony Railroad*, 168 Mass. 92, 99. It follows that the defendants had no legal standing to petition for incorporation under G. L. c. 114, § 1, and that an injunction should issue restraining the defendants from attempting to form a corporation under G. L. c. 114, § 1, and G. L. c. 179, until further order of the Superior Court.

The remaining question is, Should the Parish account to the trustees for the profits from the parish picnics and should the Parish be charged rental for the use of the trust property for parish picnics? Upon the facts disclosed we are of opinion there should be no accounting between the trustees and the Parish as beneficiaries under the trust. The use of the cemetery grounds was with the assent of the trustees and of the cemetery board. There was no understanding or agreement express or implied that the Parish should pay the trustees for the use of the grounds, and the money received by the Parish for the use of the cemetery grounds for picnics and otherwise has been mingled with the general funds of the Parish with the acquiescence of the trustees, and without demand that the Parish pay any rentals.

*Decree accordingly.*