[No. 26646. Department Two. December 27, 1937.]
R. L. ESTILL et al., *Respondents*, v. W. H. BERRY et al.,
*Appellants*.[1]

MILLARD, J., dissents.

*Hulbert, Helsell & Bettens* (*Paul Fetterman*, of
counsel), for appellants.

*Graham & Howe* and *Julian O. Matthews*, for re-
spondents.

BEALS, J.—Boren avenue in the city of Seattle runs
approximately north and south, and crosses Olive way
at right angles. At about a quarter after five o'clock
in the afternoon of December 24, 1934, Celia Estill, one
of the plaintiffs in this action (who will hereinafter be
referred to as though she were the sole party plain-
tiff), left the President Apartment Hotel, which is
located on the south side of Olive way, half a block
east of Boren avenue, and, with her friend, Miss
Harriet Wilson, walked to a cafe, also located on the

[1]Reported in 74 P. (2d) 482.

south side of Olive way, half a block to the west of Boren avenue.

Having dined, the two ladies left the restaurant for the hotel at about a quarter after six, walking east, always on the south side of Olive way. As they approached the southwest corner of the intersection of Boren avenue, plaintiff testified that she looked to her left for traffic which might interfere with her crossing, and, seeing none, proceeded on her way across the street. Plaintiff was a little in advance of her friend, and had taken five or six steps into the street, a distance of ten or twelve feet, when she collided with an automobile owned by defendants W. H. and Christine Berry, in which both defendants were riding, Mr. Berry driving, proceeding south along Boren avenue. Plaintiff received injuries for which she sued, contending that the accident proximately resulted from defendants' negligence.

Defendants denied all negligence on their part and pleaded contributory negligence on the part of plaintiff. The action was tried to a jury, which returned a verdict in defendants' favor. Plaintiff filed a motion for a new trial, which motion the trial court granted. From the order granting a new trial, defendants have appealed.

Appellants assign error upon the refusal of the trial court to sustain their challenge to the sufficiency of the evidence; upon the denial of their motion for a directed verdict; and upon the entry of the order granting a new trial.

On the Christmas eve during the course of which the accident occurred, it was raining, and there was considerable traffic to and fro on Olive way, which is an arterial highway. Boren avenue, on the contrary, at or near its intersection with Olive way, carries little traffic. East of Boren avenue, Olive way slopes to the

west on a downgrade of approximately six per cent. West of Boren avenue, the downgrade is lessened to two and one-half per cent. To the north, Boren avenue slopes down towards the north at approximately five and one-half per cent, while south of Olive way the downgrade towards the north increases to eleven and one-half per cent. The paved portion of Olive way is forty-two feet wide, and that of Boren avenue is the same width north of Olive way, but is only thirty-two feet wide south of that highway. It was, of course, dark at six o'clock on a December evening, but the intersection was illuminated by cluster street lights.

Respondent testified that, as she reached the Boren avenue curb on the southwest corner of the intersection, she looked to her left, and, observing no traffic which threatened her safety, proceeded across Boren avenue; that there was a car parked on the west side of Boren avenue to the south of the intersection, a little distance up the hill, which somewhat interfered with her view to the south along Boren avenue, and that she looked in that direction to note any approaching traffic as she reached a position on the street from which she could look south along Boren avenue. The two ladies were proceeding at about the center of the proper pedestrian crossing (no crossing lines being indicated on the pavement), respondent in advance, they testifying that, while they were walking rather rapidly, they were not running, and that they were not engaged in conversation.

Respondent stated that she did not see appellants' car at all, and knows only that she received a severe blow. Respondent's companion testified that she did not see appellants' car, but that she heard respondent scream, and then saw her either sitting or lying upon the pavement, about fifteen or twenty feet south from

the intersection, appellants' car standing approximately two feet beyond her.

It appears from the evidence introduced by appellants that Mr. Berry, who was driving south on Boren avenue, stopped at the arterial stop sign on the west side of that street, just to the north of the intersection, and then, in low gear, proceeded to cross Olive way, shifting to second gear while in the intersection, attaining a maximum speed of from twelve to fifteen miles per hour. Mr. Berry testified that he was looking ahead and saw the parked car on the west side of Boren avenue, and was laying his course so as to pass safely to the east thereof.

He testified that he did not see either respondent or Miss Wilson until after the accident, and that the first he knew of the collision was Mrs. Berry's exclamation, "You hit her," he at the same time hearing a crash against the side of his car. Mrs. Berry testified that she was sitting to the right of her husband on the front seat, and that she first became aware of the presence of respondent and Miss Wilson when she saw, through the window, a woman's face, and instantly saw respondent collide with the side of the automobile just at the right-hand door, beside which the witness was sitting.

It appears that appellants offered to take respondent to the hospital, but that she said that she was all right, and, assisted by Miss Wilson, proceeded on foot towards her hotel, followed by Mrs. Berry. Mr. Berry parked his car and followed the ladies. Upon arrival at the hotel, it appeared that respondent had been seriously injured, and Mr. Berry notified the police department, asking that an ambulance be sent. One of the police officers took respondent to the hospital in his police car. The other officer went with Mr. Berry to examine his car, the two testifying that they found

respondent's purse on the right running board, and that the only mark upon the car was an injured right front door handle, which was badly bent. The front of the car bore no indication that it had collided with any object, nor was there any mark on the fender.

Respondent's injuries consisted of a badly fractured right arm, accompanied by injury to the muscles, and at the time of the trial, the fractured bone had not formed a union.

Miss Wilson testified that sometime before the accident, she, in the society of some friends (respondent not being present), had drunk some liquor. Appellants testified that the odor of liquor was noticeable on respondent's breath, and that she and her companion walked unsteadily. Respondent denied that she had been drinking, and in this she was corroborated by the manager of the hotel, who relieved her at the switchboard when she left for dinner, and by other witnesses. We regard this phase of the testimony as unimportant.

Appellants strenuously argue that the record fails to show any negligence on the part of the driver of the car, and indeed, affirmatively shows that there was no negligence in this connection. Appellants also argue that, from the record, it should be held, as matter of law, that respondent was guilty of contributory negligence.

The serious question presented on this appeal involves respondent's alleged contributory negligence. There is little dispute concerning the facts. It is not contended that appellants' car was being driven at excessive speed or was anywise out of control, and it appears from all the evidence that it stopped promptly after the accident. It was raining, and one of respondent's witnesses described the weather as "blustery." Concerning this matter, respondent herself testified:

"It was kind of a driving rain, but it was a hard,—not pouring down, but the wind was blowing."

Respondent testified that she was not wearing a hat, and that when she left the restaurant she arranged her sweater so as to protect the upper portion of her dress from rain. She said, "I was holding the sweater up;" later testifying that she was so holding the sweater with her left arm and hand. She also testified that she was walking rapidly, but was not running. Respondent's counsel argue that the lights of cars passing on Olive way and the reflections from the wet pavement might easily have confused her, but in this connection it must be noted that, in answer to the question, "Did the passing traffic on Olive way,—were there any light effects from that?" respondent answered: "Not that I recall. I don't recall it throwing any reflection over there. I don't recall that."

Both respondent and her companion, Miss Wilson, testified that they did not see appellant's car. They looked to the left, but did not see the car, which was approaching them from that direction with its lights shining. South of Olive way, the paved portion of Boren avenue narrowed to thirty-two feet. In entering that street, the driver of appellant's car was also obliged to take into consideration the parked car on the west side of Boren avenue, and he consequently could not enter Boren avenue close to its westerly margin. Respondent testified that she was twelve or fifteen feet from the westerly curb line when. she collided with the car.

█ From the evidence, it cannot be doubted that respondent walked into the side of appellants' car, colliding therewith after the front portion of the car had passed her. There is, then, in the case no room for any contention that respondent was struck by the front of the automobile. Respondent, of course, had the right

of way upon the crossing; but at the same time, the obligation rested upon her to look out for approaching traffic and take reasonable care for her own safety.

In the recent case of *Hamblet v. Soderburg,* 189 Wash. 449, 65 P. (2d) 1267, this court, considering the question of the contributory negligence of a pedestrian who was killed while crossing a street within the lines of the sidewalk projected, said:

"Present day traffic upon our streets and highways is of such a nature that the duty of reasonable care, which rests upon all, requires, in almost any conceivable situation, a fairly efficient attempt at observation before a pedestrian steps into the path of vehicular traffic."

The facts of the case cited and the case at bar are dissimilar, as in that case the pedestrian apparently did not look to her left, while respondent testified that she did make such observation. Nevertheless, the principle laid down is applicable to all such situations. Appellants' car was approaching from respondent's left. It was there to be seen. It is not enough that one in respondent's position look in the direction from which danger may come; one must see what is actually there, or be presumed to have seen it. This has been repeatedly held in cases where the injured pedestrian was struck by the front of an approaching automobile. In the case at bar, respondent walked into the side of appellants' car, after the front portion thereof had passed her.

In the case of *Ogilvie v. Hong,* 175 Wash. 209, 27 P. (2d) 141, which was an action by the personal representatives of a pedestrian killed as the result of colliding with an automobile, plaintiff appealed from the adverse verdict of a jury, assigning error, *inter alia,* upon the giving of the following instruction:

"You are instructed that if you find that the decedent walked into or against the side of the defendant Hong's

car, then the decedent was guilty of negligence as a matter of law and your verdict must be for the defendants."

This court cited the text of 5-6 Huddy Encyclopedia of Automobile Law (9th ed.), 154, § 88, as follows:

"If a pedestrian walks or runs against a moving automobile which is readily observable, it may be taken for granted that he did not see the car. On this assumption, he is guilty of negligence either (1) because he did not look for approaching automobiles, or (2) because, if he looked, his observation was so careless and inattentive that he did not see the car in question. Accordingly, one walking into the side of a moving car may be adjudged guilty of contributory negligence as a matter of law."

It was held that the instruction correctly stated the law applicable to the facts of the case before the court.

In the case of *McLeod v. Kjos*, 150 Wash. 637, 274 Pac. 180, a judgment in favor of the plaintiff, entered upon the verdict of a jury, was reversed, it being held that the evidence showed that the plaintiff had been guilty of contributory negligence. In the course of the opinion, this court said:

"A pedestrian entering the paved portion of a street between street intersections is bound to take some precaution for his safety. In this case none was taken. Respondent, to all intents and purposes, closed her eyes, started hurriedly across the street between intersections and ran into the left rear fender of appellant's car. Under all our holdings this constituted gross contributory negligence as a matter of law."

In the case cited, the pedestrian was crossing between street intersections and did not have the right of way, which right was enjoyed by respondent in the case at bar. The case, however, has some bearing upon the questions here presented.

In 2 Blashfield Cyc. of Automobile Law (Perm. Ed.), 476, § 1420, the rule is laid down as follows:

"If a pedestrian steps off the curb and walks into the side of a car, or steps in front of a car without looking, or runs into it, he is precluded from recovery on the ground that he is negligent as a matter of law."

In 3 Berry Law of Automobiles, 353, § 3.210, is found the following:

"A pedestrian who, unmindful of his surroundings, walks against the side of an automobile moving in the street, cannot recover."

Referring to a somewhat similar situation, the supreme court of Minnesota, in the case of *Bowers v. Colonial Warehouse Co.*, 153 Minn. 425, 190 N. W. 609, said:

"Here the driver comes to a street intersection and stops in obedience to a traffic officer's signal, and starts at very moderate speed when the signal to cross is given. When he so starts no one is in front of the course of his vehicle. The deceased walks into the truck after more than 7 feet of the front end has passed his course. The driver, as soon as he notices the pedestrian's self-created peril, stops at once. There seems to be no basis in this situation for a jury to predicate a finding of negligence on the driver's part. It is equally difficult to see how there can be escape from finding the deceased guilty of contributory negligence. The evidence in this case calls more persuasively for a directed verdict in favor of defendants than in *Provinsal v. Peterson*, 141 Minn. 122, 169 N. W. 481."

The same court, in the earlier case of *Provinsal v. Peterson*, 141 Minn. 122, 169 N. W. 481, said:

"In this state of the evidence, taken as a whole, and which is without substantial dispute, we are clear that the learned trial court correctly held as a matter of law that no actionable negligence was shown. A verdict was therefore properly directed for defendant.

"Plaintiff offered to prove that the automobile was being run at an excessive rate of speed, and the evidence was excluded on defendant's objection as immaterial. Plaintiff contends that the ruling was error for

which a new trial should be granted. In this we do not concur. It seems clear that the speed of the automobile had nothing to do with the accident. Plaintiff did not see it approaching, and the speed thereof in no way could have deceived or misled him. He walked into the car and got hurt, and that is all there is to the situation."

The following quotation from the supreme court of Michigan, in the case of *Steele v. Hamilton,* 218 Mich. 522, 188 N. W. 345, is pertinent to this inquiry:

"It is exceedingly difficult to read the record evidence of this accident and avoid the conclusion that plaintiff was unmindful of her surroundings and ran into the automobile. It is obvious that the car occupied that part of the street immediately in front of her before she did, and had she been making the use of her eyes that most people do when traveling in a busy section of the city, she would have seen the car in season to have stopped before it struck her. Had she been struck by the front of the machine there would be room for her to contend that she occupied the street first but could not avoid the on-coming car, but when she was struck by the side of the car no such contention can reasonably be made. . . . We are of the opinion that the evidence, as it appears in the record, was such that the trial court should have directed a verdict for the defendant on the ground that plaintiff herself was guilty of negligence, as a matter of law."

The case of *Dando v. Brobst,* 318 Pa. 325, 177 Atl. 831, and *Bailey v. Fore,* 163 Va. 611, 177 S. E. 100, are also in point in this connection.

Respondent cites many cases, and relies upon the well established rule that a pedestrian crossing a street within the boundaries of the cross-walk has the right of way. Respondent also cites the recent case of *Ahrens v. Anderson,* 186 Wash. 182, 57 P. (2d) 410, in which we said that a pedestrian who, before starting to cross a street at a regular crossing, looked for traffic, and was injured by colliding with an automobile, might or might

not be guilty of contributory negligence, depending upon many circumstances and conditions, and that the question was ordinarily one which must be decided as a question of fact and not as matter of law.

In the case at bar, it does not appear that there was any traffic which could endanger respondent save appellant's car. This car was proceeding directly across Olive way and was plainly visible to anyone occupying respondent's position as she started and continued across Boren avenue. Notwithstanding this, respondent proceeded on her way and, walking rapidly, collided with the side of the automobile.

Under these facts, the texts and authorities above quoted and the opinion of this court in the case of *Ogilvie v. Hong, supra,* are controlling, and it must be held, as matter of law, that respondent was guilty of contributory negligence, and cannot recover against appellants. The trial court, then, erred in refusing to grant judgment in appellants' favor, as matter of law, and also erred in granting respondent's motion for a new trial.

The order appealed from is reversed, with instructions to the trial court to enter judgment in appellants' favor.

STEINERT, C. J., ROBINSON, and BLAKE, JJ., concur.

MILLARD, J. (dissenting)—Although the granting of a new trial is assigned as error, no argument is offered in support of that assignment. I deem it unnecessary to cite authority in support of the rule that errors assigned are waived if not argued.

The question whether the appellants were guilty of negligence and the question whether Celia Estill, who was within the boundaries of the pedestrian crosswalk at the time she was struck by appellants' automobile, was guilty of contributory negligence, were questions of fact. Under the evidence, we have no right to say

that Celia Estill did not act as an ordinarily prudent person would act under the circumstances and therefore she is guilty of contributory negligence as a matter of law.

To hold that, under the facts in the case at bar, the question of contributory negligence is not one of fact for the jury is, without mentioning same, an overruling of many of our prior opinions.

The order should be affirmed.