[No. 28376.   Department One.   October 23, 1941.]

R. W. CADY, *Respondent*, v. FRED J. KERR *et al., Defendants*, K. K. KIRSCHNER *et al., Appellants*.[1]

[1]Reported in 118 P. (2d) 182.

2

*Allen, Froude & Hilen,* for appellants.

*J. W. Graham,* for respondent.

STEINERT, J.—Plaintiff sought by this action to have the superior court for Mason county appoint commissioners to establish and mark the boundary line between a certain tract of land of which plaintiff was alleged to be the owner and another tract of land which defendants Fred J. Kerr and wife and K. K. Kirschner and wife were alleged to own. Defendant Fred J. Kerr answered, reciting that he was unmarried and denying every allegation in the complaint, including the allegation that he was one of the owners of the second tract of land above mentioned. Defendant Mason county appeared but filed no answer. Defendants Kirschner answered, admitting in part and denying in part the allegations of the complaint and further alleging, as a first affirmative defense, that a large number of other landowners were affected by plaintiff's action and that plaintiff should therefore be required to bring in such other landowners as parties. These allegations were in turn denied in plaintiff's reply. Other affirmative defenses were pleaded in the Kirschners' answer, but with these we are not now concerned.

After a hearing, the court, sitting without a jury, made findings of fact and conclusions of law, upon which the court entered an interlocutory decree dismissing the action with prejudice as to defendant Fred J. Kerr, directing that a survey and determination of the boundary between the lands in question be made by three commissioners appointed by the court, and retaining jurisdiction of the action for the ultimate entry of a final decree. Defendants Kirschner alone have appealed from the interlocutory decree as entered. They base their appeal on a short record pursuant to Rule IX, subd. 2, of the Rules of the Supreme Court, 193 Wash. 10-a.

Inasmuch as appellants' assignments of error are all

directed against the conclusions of law which the trial court drew from its findings previously made, and since the findings present the facts with which we are here concerned, we shall recite those findings *in haec verba,* and likewise set forth the conclusions drawn therefrom. To avoid possible confusion resulting from a similarity of names, we call attention to the distinction between the name of Fred *J.* Kerr and that of Fred *H.* Kerr, as they appear therein. The court found, as facts, the following:

"I. That R. W. CADY [respondent] is a contract purchaser under a forfeitable real estate contract from North Pacific Public Service Company, a corporation, of the following described property situated in Mason County, Washington, to-wit:

"Lot 26 in the unrecorded plat of OLYMPIC BEACH located in Government Lot 1, Section 7, Township 22 North Range 3 W.W.M. and the second class tide lands situate in front of said Lot, the said Lot 26 being otherwise described by metes and bounds as follows: [Here follows a metes and bounds description, which it is unnecessary to recite.]

"II. That K. K. KIRSCHNER and GEORGIA KIRSCHNER, his wife, are contract purchasers under a forfeitable real estate contract, of a tract of land known as Lot 1 of Kerr's Hood Canal Water Front Tracts, plat of which is unrecorded, the said lot being described as

"The north 165 feet of Lot 4, Section 18, Township 22 North, Range 3 W.W.M. Mason County, Washington, under a contract of purchase from the defendants, FRED J. KERR and wife, the fee simple title to said Lot 1 of Kerr's Hood Canal Water Front Tracts, subject to the contract for the sale thereof to K. K. KIRSCHNER and wife, being in FRED H. KERR, who is not a party to this action. That Lot 4, Section 18, Township 22 North, Range 3 West W.M., Mason County, was platted under an unrecorded plat as Kerr's Hood Canal Water Front Tracts into eight separate tracts, several of which have been conveyed to persons not parties hereto, and the remainder of the tracts being owned by Fred H. Kerr, and that all of the descriptions con-

veying said property to said owners are conveyed with specific reference to the north line of Lot 4, Section 18, Township 22 North, Range 3 West, W. M.

"III. That a dispute has arisen as to the true and correct location of the boundary lines between the property known as Lot 26 in the unrecorded plat of Olympic Beach, described in paragraph I hereof, and the property described in paragraph II hereof, and because of such dispute said boundary line has become obscure and uncertain, and the parties are unable to reach an agreement as to the true location thereof.

"IV. That pursuant to the provisions of Sections 947 to 949 of Remington's Revised Statutes it is necessary and advisable that said disputed, lost and uncertain boundary referred to in the preceding paragraph be established and properly marked. The court hereby finds that W. C. Miller, Walter W. Weedin and Geo. M. Ashford are competent, suitable and disinterested persons to be appointed commissioners, as provided in said statute."

From these findings of fact, the court drew the following conclusions of law:

"I. That plaintiff's [respondent's] action be dismissed with prejudice and with costs as to the defendant, FRED J. KERR,

"II. That NORTH PACIFIC PUBLIC SERVICE COMPANY and FRED H. KERR are not necessary parties to this action, particularly in view of Section 8430-22, Pierce's 1939 Code, Section 308-2 of Remington's Revised Statutes.

"III. That plaintiff [respondent] is entitled to the appointment of commissioners for the purpose of surveying, erecting, establishing and marking boundaries between the properties hereinabove described, the cost of such proceeding to be determined or apportioned upon the final hearing upon the commissioners' report, as provided in Section 949 of Remington's Revised Statutes."

The first assignment of error which we shall notice, although it is not the first in order, is that the court erred in making conclusion of law number one,

wherein it concluded that the action should be dismissed, with prejudice, as to Fred J. Kerr.

The record discloses that, on June 28, 1935, Fred J. Kerr, as seller, executed to appellants Kirschner, as purchasers, a real estate contract covering the land described in finding of fact number two, which is the land latterly occupied by appellants and in which they claim to have an interest. The record further reveals that, on August 1, 1939, which was prior to the commencement of this action, Fred J. Kerr assigned the contract of June 28, 1935, and conveyed the property therein described to Fred H. Kerr, and that the instrument of assignment and conveyance was, likewise, filed for record prior to the commencement of this action. At all times pertinent to this case, Fred J. Kerr has been a widower. As intimated above, Fred J. Kerr in his answer denied, in effect, that he had any interest in the land, either presently or at the time of the commencement of the action. The limited statement of facts presented upon the appeal contains no evidence, other than that heretofore recited, concerning Fred J. Kerr's connection with any of the land here involved. Upon this showing by the record, it definitely appears that Fred J. Kerr had no interest in the land at the time of, or since, the commencement of this action, and hence he was not a necessary party thereto. We therefore find no error in the trial court's first conclusion of law.

The next assignment of error is directed against conclusion of law number two, wherein the court concluded that North Pacific Public Service Company and Fred H. Kerr were not necessary parties to the action. It will be borne in mind that North Pacific Public Service Company was the vendor named in the real estate contract covering the land which respondent now occupies, and that Fred H. Kerr was the assignee

and grantee of Fred *J.* Kerr's former interest in the land which appellants now occupy. As already indicated, neither North Pacific Public Service Company, the title holder of the first tract, nor Fred H. Kerr, the title holder of the second tract, was made a party to the action.

Appellants contend that, since respondent is simply a purchaser of the first tract of land under a forfeitable real estate contract, he cannot maintain this action without bringing in as a party North Pacific Public Service Company, his vendor and the holder of the legal title to that parcel of land. They further argue that respondent cannot maintain this action against them as purchasers of the second tract of land without also joining as a party Fred H. Kerr, their vendor and the holder of the legal title to that tract. Respondent's contention is to the contrary, and is in accord with the trial court's conclusion of law number two.

With respect to parties plaintiff, the rule appears to be that, in the absence of statute prescribing a different procedure, a suit for the determination of boundary lines may be brought and maintained by an owner or part owner of the property, the boundary line of which is sought to be ascertained and established, or by one holding such property as owner. *Cushing v. Miller,* 62 N. H. 517; 8 Am. Jur. 809, Boundaries, § 88.

Whether or not a vendee under a forfeitable real estate contract is to be considered an owner or part owner, or one holding as such owner, may be a debatable question under the present state of our decisions. We have held in a number of cases, and recognized in others, that such contracts, so long as they remain executory and forfeitable, create no interest in the land in the vendee and convey no title therein to him. *Schaefer v. Gregory Co.,* 112 Wash.

408, 192 Pac. 968; *Ashford v. Reese,* 132 Wash. 649, 233 Pac. 29; *In re Kuhn's Estate,* 132 Wash. 678, 233 Pac. 293, affirmed on rehearing, 135 Wash. 693, 236 Pac. 568; *Peck v. Farmers Nat. Bank,* 137 Wash. 627, 243 Pac. 861; *Frye v. King County,* 151 Wash. 179, 275 Pac. 547, 62 A. L. R. 476; *First Nat. Bank v. Mapson,* 181 Wash. 196, 42 P. (2d) 782; *In re Binge's Estate,* 5 Wn. (2d) 446, 474, 105 P. (2d) 689, 701. On the other hand, we have held that such a contract creates a *claim or lien* which can be enforced against the land, although the claim or lien is not title. *Daniels v. Fossas,* 152 Wash. 516, 278 Pac. 412. We have also held that, despite what was said in the *Schaefer, Ashford,* and *Kuhn* cases, *supra,* with respect to the effect of such contracts, they do create *rights enforcible against the land* which is subject to the contract. *Culmback v. Stevens,* 158 Wash. 675, 291 Pac. 705; compare, *Hubbard v. Grandquist,* 191 Wash. 442, 71 P. (2d) 410. However, we need not debate this question, nor pursue it to a conclusive settlement here, for the reason that we have a statute, to which we shall refer later, wherein is prescribed the procedure to be followed in actions for the establishment of obscure or uncertain boundary lines.

With respect to parties defendant in such cases, however, it is the clearly settled rule, in the absence of statute to the contrary, that among the defendants must be included the owners of adjoining lands and all persons (other than the plaintiff or plaintiffs, of course) who have a direct interest in the result of the proceedings, legal or equitable—whether the estates of such persons be in possession, reversion, or remainder, in severalty or as cotenants—for otherwise such persons are not bound as to any determination of the location of the boundaries. *Dows Real Estate & Trust Co. v. Emerson,* 125 Iowa 86, 99 N. W. 724; *Pope v. Melone,* 2 A. K. Marsh. (9 Ky.) 239; *Watkins v. Childs,*

80 Vt. 99, 66 Atl. 805, 11 Ann. Cas. 1123; *York v. Alley* (Tex. Civ. App.), 25 S. W. (2d) 193; 11 C. J. S. 686, Boundaries, § 101; 8 Am. Jur. 809, Boundaries, § 88; 4 Pomeroy, Equity Jurisprudence (4th ed., 1919), § 1385, n. 6.

We come now to the statute, referred to above, which prescribes the procedure in cases of this kind. Rem. Rev. Stat., § 947 [P. C. § 7412], provides:

"Whenever the boundaries of lands between two or more adjoining *proprietors* shall have been lost, or by time, accident, or any other cause shall have become obscure or uncertain, and the adjoining *proprietors* cannot agree to establish the same, one or more of said adjoining *proprietors may bring his civil action in equity,* in the superior court for the county in which such lands, or part of them, are situated, and such superior court, as a court of equity, may, upon such complaint, order such lost or uncertain boundaries to be erected and established and properly marked." (Italics ours.)

Rem. Rev. Stat., § 949 [P. C. § 7414], provides:

"The proceedings shall be conducted as other civil actions, and the court, on final decree, shall apportion the costs of the proceedings equitably, and the costs so apportioned *shall be a lien upon the said lands,* severally, as against any transfer or encumbrance made of or attaching to said lands, from the time of the filing of the complaint: . . ." (Italics ours.)

It will be observed that Rem. Rev. Stat., § 947, uses the word "proprietor," instead of the word "owner," as the person who may *bring* the action. It thus becomes necessary to determine the meaning of the word "proprietor" as used in the statute.

Ordinarily, the word "proprietor," in its legal signification, means an owner, or one who has the legal right or exclusive title to anything, whether in possession or not. *Ferguson v. Arthur,* 117 U. S. 482, 29 L. Ed. 979, 6 S. Ct. 861; *Koppel v. Downing,* 11 App.

D. C. 93, 103; *Latham v. Roach*, 72 Ill. 179; *Louisville Planing Mill Co. v. Weir Sheet Iron Works*, 199 Ky. 361, 251 S. W. 176; *Simon v. Sleinis*, 270 Mass. 465, 170 N. E. 421; *State v. Woolworth Co.*, 184 Minn. 51, 237 N. W. 817, 76 A. L. R. 1202; *Eldridge v. Finnegar*, 25 Okla. 28, 105 Pac. 334, 28 L. R. A. (N. S.) 227; *Standard Grocery Co. v. National Fire Ins. Co.*, 161 Tenn. 640, 32 S. W. (2d) 1023; *Turner v. Cross*, 83 Tex. 218, 18 S. W. 578, 15 L. R. A. 262; Webster's New International Dictionary (2d ed.).

However, in the dictionary just mentioned, the lexicographer states that the word "proprietor" is sometimes used, especially in statutory construction, in a wider sense, as a person having an interest less than an absolute and exclusive right, such as the usufruct, or present control and use, of property. In *Ingram v. Howard*, 221 Ala. 328, 128 So. 893, and in *Clark v. Ingram*, 230 Ala. 160, 160 So. 229, it was held that a purchaser of realty under a contract that was still subsisting had such an interest in the property as made him the owner to the extent of subjecting *his* interest to a statutory mechanic's lien.

In determining the meaning of a word as used in a particular instance, regard must necessarily be had to the subject matter in connection with which it is used, and also to the context of the statute wherein it may be employed. It may, on occasion, have reference to a business as distinguished from the land on which the business is conducted, as, for instance, the "proprietor" of a drug store, a theater, or a newspaper. Yet even in such cases, the word usually implies ownership of the business. When the word is used in relation to land, however, it ordinarily imports legal right or exclusive title to the land, that is, ownership. Under the decisions of this state heretofore cited, respondent has no *title* to the land occupied by him, but, at most,

only a claim, lien, or right enforcible against the land.

Reverting now to the statute above quoted, and examining its context, we find that Rem. Rev. Stat., § 949, specifically provides that on final decree the costs of the proceedings shall be equitably apportioned and, when so apportioned, shall be a lien upon the lands severally. In conclusion of law number three, and in the interlocutory decree, the trial court announced that the costs of the proceedings should be determined and apportioned in accordance with that section of the statute. If that is done, the costs of the survey, which, according to the evidence in the case, will amount to approximately one thousand dollars, will become a lien on either one or both of the tracts of land involved herein although the owner of neither tract is a party to the action.

Since only the owner of land can bind his property for the costs of a survey, we are of the opinion that one who brings an action under the statute for the location and establishment of boundary lines must be an owner of some part of the lands affected thereby, and that, consistent with that conclusion, the word "proprietor," as used in Rem. Rev. Stat., § 947, must be held to have the same meaning as the word "owner."

In arriving at this conclusion, we are cognizant of the fact that, in the case of *Winsor v. German Savings & Loan Society*, 31 Wash. 365, 72 Pac. 66, we defined the word "proprietor" as meaning the person occupying the premises either as tenant or owner. That case, however, involved the construction of Bal. Code, § 5433 (now Rem. Rev. Stat., § 720 [P. C. § 8054]), relating to the granting of an injunction to restrain the malicious erection of any structure intended to spite, injure, or annoy "an adjoining proprietor." That section of the statute was intended to protect the *person*

*actually injured,* whether the owner or the tenant of the premises, and not to establish the true location or boundaries of the land itself. Furthermore, that statute involved no question of the imposition of a lien on the land. We therefore do not regard that case as having any controlling effect on the question here involved.

Whether or not the rule which we have above declared would apply in a case where the vendee in an executory contract of sale had substantially performed the contract, and where the vendor held only a bare legal title, we are not here called upon to decide, for the record before us does not present that situation.

■ Respondent further contends, and the trial court, in reaching conclusion of law number two, seems to have been of the opinion, that the respective owners of the particular tracts of land were not necessary parties to the action because of the rule prescribed by Rem. Rev. Stat. (Sup.), § 308-2 [P. C. § 8430-22], subd. 3, which provides:

"No action or proceeding shall be defeated by the nonjoinder or misjoinder of parties. New parties may be added or substituted and parties misjoined may be dropped by order of the court at any stage of the cause, as the ends of justice may require." Rule of Practice II, 193 Wash. 40-a.

Respondent's argument in this connection is that the enforcement of joinder of parties or the refusal to join them rested in the discretion of the trial court. We do not agree with that contention as applied to this case. The purpose of the rule announced in the statute just quoted is to permit parties who are in any way affected by a controversy to be brought into the pending litigation, in order to avoid a multiplicity of suits and to determine all subjects of the controversy, in so far as proper, in one action. *Capital Nat. Bank v.*

*Johns,* 170 Wash. 250, 16 P. (2d) 452. The rule clearly means that the court is *authorized* to add or substitute new parties and to drop misjoined parties, as the ends of justice may require. It does not, however, empower the court to neglect or refuse to add or to drop such persons as the law requires to be made parties to the particular action. In other words, the rule permits the court to do that which ought to be done, but does not permit it to do, affirmatively or negatively, what should not be done.

Our conclusion, then, is that respondent could not bring, and cannot maintain, this action without having North Pacific Public Service Company, the owner of the tract of land occupied by him, joined as party plaintiff therein.

For similar reasons, as well as upon the general rule, heretofore mentioned, with respect to parties defendant in such actions, we hold that Fred *H.* Kerr, the owner of the land occupied by appellants, was a necessary party defendant in this suit.

The result of our holdings upon the points which we have just discussed requires a reversal of the interlocutory decree.

Appellants raise two additional questions which, on account of the character of the case and because of the proceedings which may ultimately follow in the superior court, require consideration and determination now. Upon the first of these questions, appellants contend that the owners of the eight lots into which Government Lot 4, Section 18, Township 22 North, Range 3 West W. M., was subdivided under the unrecorded plat of Kerr's Hood Canal Water Front Tracts, should all be made parties defendant in the present action.

The record discloses that only lot one of the plat mentioned, which is the lot occupied by appellants, ad-

joins the property line here sought to be established and marked. The other seven lots are all south of lot one and do not touch the line here in question, although, as stated in finding of fact number two, "all of the descriptions conveying said property [the other seven lots] to said owners are conveyed with specific reference to the north line of [Government] Lot 4, Section 18, Township 22 North, Range 3 West, W.M.," which is the boundary line here in question.

Passing the point that the phrase "conveyed with specific reference to the north line," etc., is in itself somewhat vague and uncertain, we are of the opinion that, for other reasons, appellants' contention cannot be sustained.

It is well settled that possible claims of other persons, whose lands are not adjacent to the disputed boundary line, even though the division line between the property of such persons and that of one of the parties concerned in the actual controversy may be incidentally involved, do not require such persons to be made parties to the action between the actual disputants. *Smith v. Anderson,* 117 Wash. 307, 201 Pac. 1; *Duplessis v. Lastrapes,* 11 Rob. (La.) 451; *Klinker v. Schmidt,* 106 Iowa 70, 75 N. W. 672; *Kennedy v. Niles,* 96 N. W. (Iowa) 772; 11 C. J. S. 686, Boundaries, § 101.

In *Smith v. Anderson, supra,* this court held that the only necessary or proper parties to an action for the location of a disputed boundary line were the landowners immediately affected by the controversy. The following language states the reason for such holding:

"It is clear that to bring the parties [sought to be included] in would introduce a new controversy which possibly could not be determined without the introduction of others. And it could be that the circle would so widen as to involve all landowners in the township, many of whom may be satisfied with the

existing lines. In the determination of controversies a court is not required to borrow trouble. It does its full duty when it determines the immediate controversy before it."

A clear statement of the possibilities and eventualities involved in such situations, and the reason for the rule set forth above, are stated in a note (1908), 119 Am. St. 66, at page 72, reading as follows:

"It may be that the establishment of the boundary may incidentally affect persons whose lands are not contiguous to the complainant's; that is to say, the defendant, if it be established that what he claims as his line must be moved in a particular direction, may, in turn, claim that another of his boundaries should be changed correspondingly, and in changing it, that an encroachment must be made on the lands claimed and possessed by one who is not a party to the suit. This does not require that such third person be made a party defendant. If it did, the latter might make a similar claim respecting some other person, and the process of bringing in new parties might become interminable."

Appellants place considerable reliance on the case of *Seattle Factory Sites Co. v. Saulsberry,* 131 Wash. 95, 229 Pac. 10. In that case, however, the dispute affected the boundary lines of each and all of a number of owners of shorelands, no two of whom could agree upon the division or boundary side lines of their respective properties. Under that situation, this court held that a proper determination of one boundary line necessarily called for the determination of all others; and that, therefore, it was proper to bring in the owners of all the tracts as parties to the action, to the end that the decree ultimately to be rendered should become effective as against all such owners. That situation is not comparable to the one presented here, and therefore that case is not controlling of this one.

Upon the second additional question raised by

appellants, they contend that the trial court abused its discretion in directing the establishment of the boundary line, because, it is alleged, the cost of the survey is wholly disproportionate to the value of the land involved. The sale price, to appellants, of the land occupied by them was five hundred dollars, while the cost of the survey will amount to approximately one thousand dollars.

Appellants' argument on this phase of the case is contained in one sentence reading as follows:

"This disparity in the cost of the survey and the value of the land involved is so great that it needs no argument to prove that it was an abuse of discretion on the part of the court to have appointed commissioners to establish the boundary line, *even had all parties been before the court.*" (Italics ours.)

We cannot accept appellants' dogmatic statement as expressive of a self-evident truth. The trial court found that a dispute had arisen between the parties concerning the true and correct boundary line dividing the lands here involved; that because of such dispute the boundary line had become obscure and uncertain; and that the parties were unable to reach an agreement as to the true location of the line. In such situations, the statute above quoted provides that the court may order that the uncertain boundaries be erected, established, and properly marked.

Had the court not followed the course that it did, the dispute between the parties would have continued, and the location of the boundary line would have remained uncertain. The only way by which the dispute could be settled and the boundary line made certain was by the method prescribed by the statute and followed by the court. It is unfortunate that the cost of a survey is so great, and it is still more unfortunate that, despite that fact, the parties cannot settle their differences amicably. The expense incident

to litigation between individuals, however, is a matter for the individuals themselves to consider as possibly constituting a sufficient reason and incentive for an amicable adjustment, but it cannot afford any sound basis for a refusal by the court to dispose of a controversy before it in the manner provided by law. What we have said upon this second question has particular reference to a contemplated situation when all the necessary parties shall be before the court, as indicated above.

The interlocutory decree will be reversed, with leave to respondent to amend, or to obtain, if he can, amendment of the complaint, in accordance with the views and the rules hereinabove stated.

ROBINSON, C. J., MAIN, MILLARD, and DRIVER, JJ., concur.

[1]Reported in 118 P. (2d) 167.