[No. 1850-2. Division Two. January 19, 1977.]

LILLIAN L. VAN CLEVE, *Respondent*, v. ESTHER M. BETTS, ET AL, *Appellants*.

*William R. Hickman* and *Reed, McClure, Moceri & Thonn,* for appellants.

*William J. Rush* and *Rush & Hayes,* for respondent.

REED, J.—Defendant Esther Betts appeals from a judgment entered against her in the sum of $25,000 for injuries sustained by the plaintiff, Lillian Van Cleve. The facts giving rise to this appeal are as follows:

On March 18, 1973, Mrs. Van Cleve was walking home from work and had stopped at the southwest corner of the intersection of Pacific Avenue and 24th Street in Tacoma. When the pedestrian control signal indicated "Walk," she entered the crosswalk and began walking east across Pacific Avenue. Defendant, who was proceeding west on 24th Street, made a left turn onto Pacific Avenue and collided with Mrs. Van Cleve. The investigating officer determined that the point of impact was in the crosswalk at the dividing line between the center and curb lanes on the southbound side of Pacific Avenue.

At trial there was evidence that the Betts' vehicle had not entered Pacific Avenue parallel to the lanes of traffic, but rather had angled slightly across the dividing line so that the car was mostly in the inside lane but starting to enter the curb lane at the time of the accident. Although there were no dents in the vehicle, a handprint located between the right front wheel and the right front door supports an inference that Mrs. Van Cleve might have

come into contact with the car somewhere in that vicinity.

N
↑

24th STREET

DEFENDANT'S VEHICLE

PLAINTIFF →

PACIFIC AVENUE

Plaintiff's testimony was that she had looked both ways before entering the crosswalk, but had not seen the defendant's vehicle until it was too late to get out of the way. She estimated that she had taken five to seven steps away from the curb before the collision. Mrs. Betts testified that she had looked for other traffic and pedestrians prior to making her turn, and that she was unaware of plaintiff's presence until she felt or heard a thud, at which time she looked in her *left rear view mirror* and observed Mrs. Van Cleve lying in the street. As a result of the accident, Mrs. Van Cleve sustained bruises, a gash on her forehead, and a fractured skull which caused hospitalization for 9 days and resulted in her missing work from March 18 through May 25, 1973.

On appeal Mrs. Betts assigns error to (1) the trial court's directing a verdict finding that defendant was negligent as a matter of law and that her negligence was a proximate cause of the plaintiff's injuries; (2) the trial court's failure to direct a verdict holding that the plaintiff was contributorily negligent as a matter of law for walking into the side of defendant's car; (3) the trial court's denial of defendant's requested instructions relating to the duty of a pedestrian in a crosswalk and to the contributory negligence of a pedestrian who walks into the side of a car; and (4) the trial court's denial of defendant's motion for a new trial. Finding no grounds for reversal, we affirm the decision of the trial court.

██ ██ We recently reiterated the long-standing rule that a trial court may direct a verdict on questions of negligence in only two classes of cases: (1) where the circumstances of the case are such that the standard of care is the same under all circumstances and its measure is defined by law; and (2) where the facts are undisputed and only one reasonable inference can be drawn therefrom. *Breivo v. Aberdeen*, 15 Wn. App. 520, 550 P.2d 1164 (1976). *See also Baxter v. Greyhound Corp.*, 65 Wn.2d 421, 397 P.2d 857 (1964); *McQuillan v. Seattle*, 10 Wash. 464, 38 P. 1119 (1895). A motion for a directed verdict is properly granted only if when viewing the evidence in the light most favorable to the nonmoving party, it can be said as a matter of law that there is no evidence or reasonable inferences therefrom to support the position of the nonmoving party. *E.g.*, *Shelby v. Keck*, 85 Wn.2d 911, 541 P.2d 365 (1975); *Wold v. Jones*, 60 Wn.2d 327, 373 P.2d 805 (1962).

██ Plaintiff's motion for a directed verdict falls into the first class listed above; RCW 46.61.055(1)[1] requires

---

[1] RCW 46.61.055(1) provides in relevant part:

"Traffic control signal legend. Whenever traffic is controlled by traffic control signals exhibiting different colored lights, or colored lighted arrows, successively one at a time or in combination, only the colors green, red and yellow shall be used, except for special pedestrian signals carrying a word legend, and said lights shall indicate and apply to drivers of vehicles and pedestrians as follows:

motor vehicles to yield the right-of-way to pedestrians lawfully within an intersection, and RCW 46.61.060(1)[2] gives pedestrians the right-of-way when the pedestrian control signal indicates "Walk." Failure to yield the right-of-way to a pedestrian lawfully in the crosswalk is negligence as a matter of law if the pedestrian was seen or should have been seen by the driver. *Oberlander v. Cox*, 75 Wn.2d 189, 449 P.2d 388 (1969). Here, there being no evidence that Mrs. Van Cleve either left a place of safety so suddenly that Mrs. Betts had no opportunity to yield the right-of-way or that plaintiff proceeded against a red light or "Don't Walk" signal, we can reach no conclusion but that Mrs. Van Cleve was lawfully in the crosswalk. The evidence also indicates that plaintiff was a substantial distance from the curb and that there were no visual obstructions blocking defendant's view; accordingly, we conclude that Mrs. Betts, had she maintained a proper lookout, would have seen Mrs. Van Cleve. Under these facts it was proper to direct a verdict holding that defendant was negligent as a matter of law for failure to yield the right-of-way.

 Although violation of a statutory duty may be

---

"(1) Green indication

"(a) Vehicular traffic facing a circular green signal may proceed straight through or turn right or left unless a sign at such place prohibits either such turn. But vehicular traffic, including vehicles turning right or left, shall yield the right of way to other vehicles and to pedestrians lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited.

"(b) Vehicular traffic facing a green arrow signal, shown alone or in combination with another indication, may cautiously enter the intersection only to make the movement indicated by such arrow, or such other movement as is permitted by other indications shown at the same time. Such vehicular traffic shall yield the right of way to pedestrians lawfully within an adjacent crosswalk and to other traffic lawfully using the intersection."

[2]RCW 46.61.060(1) states:

"Pedestrian control signals. Whenever special pedestrian control signals exhibiting the words "Walk" or "Don't Walk" are in place such signals shall indicate as follows:

"(1) WALK—Pedestrians facing such signal may proceed across the roadway in the direction of the signal and shall be given the right of way by the drivers of all vehicles."

negligence as a matter of law, before imposing liability for such a violation, it is also necessary to find that the negligence proximately caused the harm. *France v. Peck*, 71 Wn.2d 592, 430 P.2d 513 (1967). Ordinarily questions of proximate cause are best resolved by a jury, but when the facts are undisputed and the inferences therefrom are not subject to differences of opinion, then proximate cause is a question of law to be decided by the court. *France v. Peck*, *supra* at 597. Here it is quite clear that defendant's negligence was a proximate cause of plaintiff's harm; the accident resulting in injuries to Mrs. Van Cleve was a part of the natural and continuous sequence of events which flowed from Mrs. Betts' failure to yield the right-of-way, *e.g.*, *Stoneman v. Wick Constr. Co.*, 55 Wn.2d 639, 349 P.2d 215 (1960); *Harris v. Burnett*, 12 Wn. App. 833, 532 P.2d 1165 (1975), and under such circumstances we think it was proper to direct a verdict on the question of proximate cause.

As support for her second assignment of error, defendant relies upon *Iwata v. Champine*, 74 Wn.2d 844, 846, 447 P.2d 175 (1968), in which the court made the following statement:

> We have said that a pedestrian who walks or runs into the side of a car, the front of which has passed him, is guilty of contributory negligence as a matter of law. *Estill v. Berry*, 193 Wash. 10, 74 P.2d 482 (1937).

We decline to apply this holding to the instant case for two reasons. First, the apparent rationale for this conclusion is that by walking into the side of a readily observable car, the pedestrian has utterly failed to maintain a lookout either because he did not look for approaching traffic, or because if he did look, his observation was so careless that he did not see what was there to be seen. *Estill v. Berry*, 193 Wash. 10, 17, 74 P.2d 482 (1937) (citing 5-6 X. Huddy, *Encyclopedia of Automobile Law* § 88, at 154 (9th ed. 1931)). This explanation, which presumes that the pedestrian has a duty to maintain a lookout, is seemingly in conflict with the holding in *Jung v. York*, 75 Wn.2d 195, 449

P.2d 409 (1969). The court there first referred to *Johnson v. Johnson*, 85 Wash. 18, 147 P. 649 (1915), which held if the conceded right-of-way to the pedestrian means anything at all, it puts the duty of continuous observation and avoidance of injury upon the driver of the automobile when approaching a crossing. *Jung v. York, supra* at 198. After noting that a corollary of that rule is that the pedestrian rightfully in a crosswalk has the right to assume that operators of approaching vehicles will obey the law and yield the right-of-way until he knows or should know to the contrary, the court in *Jung* went on to hold:

> A pedestrian cannot at one and the same time have a right to assume that the right of way will be yielded and a duty to look to make sure that it is. In the absence of circumstances which would alert the pedestrian rightfully in the crosswalk to the fact that an approaching vehicle is not going to yield, negligence cannot be predicated on his failure to look and see the vehicle in time to avoid the accident.

*Jung v. York, supra* at 198; *see also Johnson v. Strutzel,* 14 Wn. App. 620, 544 P.2d 47 (1975).

The apparent conflict between *Jung* and *Iwata* is readily reconcilable if we recognize that the *Iwata* holding is not a universal rule, but rather is to be applied only when the facts demonstrate the pedestrian has breached some duty.[3] Accordingly, a pedestrian who as in *Iwata* suddenly leaves a place of safety and runs into the side of a car is contributorially negligent as a matter of law for breach of the statutory duty imposed upon pedestrians by RCW

---

[3]We find support in *Beck v. Dye,* 200 Wash. 1, 92 P.2d 1113, 127 A.L.R. 1022 (1939), for the proposition that resolution of questions relating to whether a pedestrian is guilty of contributory negligence as a matter of law for walking into the side of a car is dependent upon the facts in each case. In *Beck* the court was faced with a situation which on its face fit within the rule announced in *Estill v. Berry,* 193 Wash. 10, 74 P.2d 482 (1937), that a pedestrian who walks into the side of a car is guilty of contributory negligence as a matter of law. However, the court declined to follow *Estill,* and found that the two cases were factually distinguishable. *Beck v. Dye, supra* at 7.

46.61.235(2).[4] Likewise, the pedestrian who is lawfully in the crosswalk but who ignores circumstances alerting him to the impending failure of a vehicle to yield the right-of-way and consequently walks into the side of a car, is guilty of contributory negligence as a matter of law for breach of the limited duty of observation delineated in *Jung v. York, supra.* Here, one can reasonably infer from the facts that Mrs. Van Cleve breached no duty and therefore was not contributorially negligent. The evidence is that she was a substantial distance from the curb, and there is no indication that circumstances were present which would have alerted her to the fact that Mrs. Betts was not going to yield the right-of-way. Because we cannot say as a matter of law that Mrs. Van Cleve breached any duty, we conclude that it was proper to deny defendant's motion for a directed verdict of contributory negligence.

Our second reason for rejecting this argument is that under the facts of the instant case one could also reasonably infer that plaintiff did not walk into the side of defendant's car. Assuming arguendo that the presence of the handprint established the point of impact as being between the right front wheel and right front door, we cannot say the only way this could have happened was if Mrs. Van Cleve walked into the side of the car. Her testimony that she could move neither forward nor backward, the fact that the Betts vehicle was angling across the dividing line to the outside lane, and Mrs. Betts' testimony that she observed plaintiff lying in the street in her *left rear view mirror,* would logically support a finding that Mrs. Van Cleve was standing still and that the contact resulted because of the vehicle's angling across the southbound lanes of traffic. Under these circumstances it was proper to refuse to find plaintiff contributorially negligent as a matter of law, and instead to submit the question of Mrs. Van Cleve's negligence to the jury.

---

[4] RCW 46.61.235(2) provides:

"No pedestrian shall suddenly leave a curb or other place of safety and walk or run into the path of a vehicle which is so close that it is impossible for the driver to yield."

■ Defendant's next assignment of error relates to the trial court's failure to give two of her proposed instructions, which read as follows:

(1) If you find that the Plaintiff walked into the side of the Defendant's car, you will find the Plaintiff contributor*ily* negligent.
(2) A pedestrian in a crosswalk must exercise ordinary care for his own safety.

Simply because a statement is made by an appellate court does not mean that it can be properly incorporated into a jury instruction. *Turner v. Tacoma*, 72 Wn.2d 1029, 435 P.2d 927 (1967). Even though defendant's requested instruction on contributory negligence is based on the holding in *Iwata v. Champine, supra*, it becomes, as our previous discussion indicates, an overbroad statement of the law when it is removed from the factual context of that case. Accordingly, the trial court did not err when it denied defendant's first requested instruction.

■ With respect to both of defendant's proposed instructions set forth above, we note that a trial court's refusal to grant a proposed instruction is not error if the instructions given, when read as a whole, permit the party to argue his theory of the case. *E.g., Kjellman v. Richards*, 82 Wn.2d 766, 514 P.2d 134 (1973); *Wilson v. Walla Walla*, 12 Wn. App. 152, 528 P.2d 1006 (1974). Here the instructions given on contributory negligence and on the duty of those using public highways were more than sufficient to permit defendant to present her version of the case.

■ Defendant's final assignment of error is that the jury returned inconsistent answers to the special interrogatories and that it was therefore improper to deny her motion for a new trial. While we recognize that inconsistency in the answers to special interrogatories is properly remedied by granting a new trial, *Great Western Land & Improvement Co. v. Sandygren*, 141 Wash. 451, 252 P. 123 (1927), it is not readily apparent that such an inconsistency is present in the instant case. Here the jury found the plaintiff was negligent but that her negligence was not a

proximate cause of her injuries. Defendant contends that the only act of contributory negligence that plaintiff could have been guilty of was walking into the side of the car. We think, and the evidence suggests it is even more plausible that the jury found Mrs. Van Cleve negligent for failing to maintain a proper lookout.[5] The rule in this and other jurisdictions is that answers to special interrogatories should, if possible, be read harmoniously. *State v. Hanna*, 87 Wash. 29, 151 P. 83 (1915); *Fitzsimmons v. Wilder Mfg. Co.*, ...... App. Div. 2d ......, 384 N.Y.S.2d 523 (1976). Under the facts of this case it is conceivable the jury concluded that even if Mrs. Van Cleve had maintained a proper lookout, the speed and direction of travel of the car would have made it impossible for her to avoid a collision. Because the findings of the jury are not irreconcilably inconsistent, we find no merit to this assignment of error.

Judgment affirmed.

PETRIE, C.J., and JOHNSON, J. Pro Tem., concur.

---

[5]The apparent contradiction between our earlier discussion, in which we concluded that under the facts of this case Mrs. Van Cleve did not have a duty to maintain a lookout, and our statement here that the jury could have found Mrs. Van Cleve negligent for failure to maintain a proper lookout, is explained by the fact that the jury was not instructed per *Jung v. York*, 75 Wn.2d 195, 449 P.2d 409 (1969), as to the circumstances which must be present before a pedestrian lawfully in a crosswalk has a duty to maintain a lookout.